Robert G. KEOWN and Isabel S. Keown, his wife

v.

Robert STORTI and James Evans and Mrs. James Evans, his wife.

Civ. A. No. 76–2964.

United States District Court, E. D. Pennsylvania.

July 26, 1978.

Edwin B. Barnett, Philadelphia, Pa., for plaintiffs.

Mark P. Muller, Philadelphia, Pa., for defendant Storti.

Rhonda Lee Jordan, Norristown, Pa., for defendants Evanses.

## OPINION

LUONGO, District Judge.

This action under the Civil Rights Act of 1871 was instituted on September 21, 1976 by Robert G. Keown and his wife, Isabel S. Keown, against Robert Storti, a Plymouth Township police officer, and against Mr. and Mrs. James Evans, Plymouth Township residents who operate a residential painting business from their home. In sum, Robert Keown, a salesman for advertising services, contended that he was unlawfully arrested by Storti at the Evanses' household while attempting to make a sale to the Evanses and that the Evanses conspired with Storti to accomplish this unlawful arrest. Isabel Keown, who had accompanied her husband to the Evanses' home, made the same contention, asserting that she also had been arrested. Robert Keown was charged by Storti with the summary offense of soliciting without a permit, but the charges were withdrawn when Keown appeared before a magistrate. The Keowns then sued.

The case was tried before a jury on December 12–14, 1977. On December 12, at the close of plaintiffs' evidence, I granted

the Evanses' motion for a directed verdict. At the end of the trial, the jury rendered a verdict in favor of Robert Keown and against Storti, assessing damages in the amount of $2,500. As to Isabel Keown's claim, the jury found in favor of defendant Storti. On March 22, 1978, I denied Storti's motions for judgment n. o. v. and new trial.

██ The Keowns, the Evanses, and Storti all now have moved for allowance of costs and attorneys' fees.[1] Invariably, such motions compel a two-part inquiry. First, it must be determined whether the moving party is entitled to such an award. Under the "American Rule" adhered to by the Supreme Court, attorneys' fees normally are not recoverable in federal litigation in the absence of statutory authorization. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). This case is governed by the statutory authority to award attorneys' fees as part of the recoverable costs in the case under the Civil Rights Attorney's Fees Awards Act of 1976 (hereinafter, Fees Act), Pub.L. No. 94–559, 90 Stat. 2641, *amending* 42 U.S.C. § 1988, which provides:

> "In any action or proceeding to enforce a provision of [*inter alia,* the Civil Rights Act of 1871], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."

If the entitlement question is answered affirmatively, the second question is the amount to be awarded. In this circuit, that question must be answered according to the "*Lindy* rules" promulgated by the Court of Appeals for the Third Circuit in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (1973) (*Lindy I*), & 540 F.2d 102 (1976) (en banc) (*Lindy II*), and its progeny.

## I. *The Keowns' Motion*

### A. *Entitlement*

██ Under the Fees Act, the basic prerequisite to entitlement is that the moving party be the "prevailing party" in the litigation. Even though plaintiffs are husband and wife, this requirement mandates different results with respect to each of them since only one of them was successful. Isabel Keown prevailed on none of her claims, and she therefore cannot recover counsel fees. Robert Keown was successful, but only to a limited extent. He prevailed against Storti, but not against the Evanses; with his wife, he sought damages in excess of $10,000, but he recovered far less than that amount. Nevertheless, I have no doubt that he is a "prevailing party" for purposes of this motion. In *Hughes v. Repko,* 578 F.2d 483 (3d Cir. 1978), a case interpreting the Fees Act, the Court of Appeals provided the following guidance on the meaning of that term—

> "As in cases assessing other court costs, it is not always easy to determine who is the 'prevailing party,' particularly where there are multiple claims and/or multiple parties, and where the petitioning party is not completely successful.
>
> In order to apply the 'prevailing party' language of the statute fairly, we think district courts should analyze the results obtained by the petitioning party on particular claims, regardless of the number of parties. Thus, in the context of an award sought after the entry of a final order, a prevailing party on a particular claim is one who fairly can be found by the district court to have essentially succeeded on such claim, as 'claim' is used in Fed.R.Civ.P. 10(b). We say 'essentially succeeded' because in many cases a party may prevail on his basic claim but not on all aspects thereof. Given the spirit and purpose of the statute, we think our test allows the district courts to meet their

1. As the text notes, the statute authorizing recovery of attorneys' fees states that they may be included "as part of the costs." Nevertheless, the standards for awarding the fees differ from those with respect to other costs, and the fee award therefore must be treated separately.

In accordance with the normal practice of this Court (*see* E.D.Pa.R.Civ.P. 38), I shall refer the motion for costs other than counsel fees to the Clerk of Court for resolution in the first instance. This opinion deals only with the attorneys' fee issue.

obligations under the Act." 578 F.2d at 486–487 (footnote omitted).[2]

Robert Keown "essentially succeeded" on his unlawful arrest claim since the jury rendered a verdict in his favor on that claim and awarded him some of the relief sought. He therefore meets the statutory requirement.

■ Determination that the moving party prevailed in his suit does not automatically compel a decision that he is entitled to counsel fees; the award is discretionary. Nevertheless, when the moving party is the plaintiff, entitlement is presumed in the absence of strong countervailing considerations. The legislative history of the Fees Act makes clear that award of counsel fees should be allowed unless the award would be unjust. *See, e. g.,* S.Rep. No. 94–1011, 94th Cong., 2d Sess. 4, *reprinted in* [1976] *U.S.Code Cong. & Admin.News,* pp. 5908, 5912.[3] *See also Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 416–17, 98 S.Ct. 694, 697, 54 L.Ed.2d 648 (1978) (applying same standard under 1964 Civil Rights Act); Fed.R.Civ.P. 54(d) (expressing general standard with respect to costs). In this case, there are no special factors which weigh against the award of fees to Robert Keown, and he therefore is entitled to them.

## B. *Amount*

■ As already noted, in this circuit the award of attorney's fees is governed by rules set forth in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973) (*Lindy I*), & 540 F.2d 102 (3d Cir. 1976) (en banc) (*Lindy II*). In addition, the Third Circuit has addressed the attorney's fee question in a number of other opinions. *See, e. g., Tranberg v. Tranberg,* 456 F.2d 173 (1972); *Merola v. Atlantic Richfield Co.,* 493 F.2d 292 (1974) (*Merola I*), & 515 F.2d 165 (1975) (*Merola II*); *Estien v. Christian,* 507 F.2d 61 (1975); *Walter v. Netherlands Mead N.V.,* 514 F.2d 1130, 1143, *cert. denied,* 423 U.S. 869, 96 S.Ct. 133, 46 L.Ed.2d 99 (1975); *United States Steel Corp. v. United States,* 519 F.2d 359 (1975); *NBO Industries Treadway Cos. v. Brunswick Corp.,* 523 F.2d 262, 279 (1975), *vacated on other grounds sub nom., Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977); *SEC v. Aberdeen Securities Co.,* 526 F.2d 603 (1975); *In re Meade Land and Development Co.,* 527 F.2d 280 (1975) (*Meade Land I*), & 577 F.2d 858 (1978) (*Meade Land II*); *Pitchford v. PEPI, Inc.,* 531 F.2d 92, 109–11 (1975), *cert. denied,* 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976); *Atlantic & Gulf Stevedores, Inc. v. Director,* 542 F.2d 602, 609–11 (1976); *Rogers v. Exxon Research and Engineering Co.,* 550 F.2d 834, 842 (1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978); *Richerson v. Jones,* 551 F.2d 918, 928–29 (1977); *Prandini v. National Tea Co.,* 557 F.2d 1015 (1977); *Kustska v. California State College,* 564 F.2d 108 (1977); *Rodriguez v. Taylor,* 569 F.2d 1231, 1244–50 (1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Shlensky v. Dorsey,* 574 F.2d 131, 149–52 (1978); *Hughes v. Repko,* 578 F.2d 483 (1978); *Shannon v. HUD,* 577 F.2d 854 (1978) (per curiam). These cases provide considerable guidance on proper computation of the fee. Computation is a two-step process: first, the court must objectively determine the reasonable value of the attorney's serv-

---

**2.** Federal Rule 10(b) provides:

 "All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation

facilitates the clear presentation of the matters set forth."

**3.** Quoting from *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968), the report states, "A party seeking to enforce the rights protected by the statutes covered by [this bill], if successful, 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"

ices;[4] then, the court must decide whether this value should be adjusted to take certain special factors into account. The data necessary to make this computation must be included in the record through affidavits, stipulations, or a hearing. *Estien*, 507 F.2d at 64; *see Lindy I*, 487 F.2d at 169–70. The Court of Appeals has repeatedly emphasized that "[t]he district court must make a separate inquiry and findings of fact with respect to each of [the] factors" used in computing the fee. *Shlensky*, 574 F.2d at 151; *see Prandini*, 557 F.2d at 1018–19.

### 1. *Objective assessment of reasonable value*

■ The reasonable value of an attorney's services is a product of two components, the compensable time devoted to the case by the attorney and the hourly rate that reasonably should be charged for those services. Plaintiffs' counsel has submitted two affidavits in which he asserts that he spent 85.6 hours on plaintiffs' case and that the reasonable hourly rate for his services is $50; the total fee request, therefore, is $4,280.

■ Rather than reproduce the affidavits in their entirety, I shall note only those portions that present difficulty. The first is that portion dealing with events in late 1975 and early 1976:

| | | No. of Hrs. |
|---|---|---|
| "11/14/75 | Conference with Mr. and Mrs. Keown re arrest | 1.5 |
| 11/24/75 | Letter to District Judge, John Sachnezenski, advising him that Mr. Keown pleads not guilty | .2 |
| 1/13/76 | Representation at hearing before District Judge | .5 |
| | Conference with Keown re same | .5 |
| | Travel back and forth to same | 2.0 |
| 1/15/76 | Research of law | 2.5 |
| 1/21/76 | Research of law | 3.0" |

It is obvious that the bulk of these entries is not directly related to this case. Instead, the entries deal with representation of Robert Keown on the soliciting without a permit charge that was filed by Storti. That was a different case in a different court. The counsel fee charged as a result of that proceeding might have been included in the damages sought from the jury since it was pecuniary loss suffered by Keown as a result of Storti's misconduct. To that extent, it is subsumed into the $2,500 damage award. In any event, the fee was not for services rendered in this case and is not compensable through this motion.

■ From the face of the affidavit, it is not apparent how much of the time spent by counsel in late 1975 and early 1976 was connected with this case. Since this case was not instituted until September 1976, it would seem that counsel's work on this case did not begin until the August 23, 1976 entry on the affidavit (which immediately follows those entries quoted above), which reads, "Research of Law. Preparation of Complaint." Nevertheless, it is possible that some of the earlier research could have aided preparation of this case and therefore could be compensable. Since the record is insufficient to make this determination, a hearing will be held for the purpose of establishing how much of counsel's time was expended in connection with this case rather than on the summary offense.

A second group of questionable items is the following:

| | | No. of Hrs. |
|---|---|---|
| "1/26/78 | Preparation of Motion for Allowance of Costs and Attorney's Fees | 1 |
| . . . . . | | |
| 3/28/78 | Research of law and preparation of Memorandum re Allowance of Counsel Fees for Robert G. Keown against defendant, Robert Storti | 3 |
| | Preparation of Supplementary Motion for Allowance of Additional Counsel Fees | ¼" |

"the amount thus found to constitute reasonable compensation should be the lodestar of the court's fee determination."

---

**4.** This value is sometimes referred to as the "lodestar" figure in light of Chief Judge Seitz' observation in *Lindy I*, 487 F.2d at 168, that

The courts are in disagreement as to whether attorneys' fees should be awarded for time spent making the fee application and litigating matters relating to the fee award. It appears that an award for such services is allowed in at least three circuits. *See Souza v. Southworth,* 564 F.2d 609, 614 (1st Cir. 1977); *Rosenfeld v. Southern Pacific Co.,* 519 F.2d 527, 530–31 (9th Cir. 1975); *Miller v. Amusement Enterprises, Inc.,* 426 F.2d 534, 539 (5th Cir. 1970).[5] The situation in this circuit is less clear, however.

In *Merola II,* 515 F.2d at 173, a panel of the Court of Appeals was presented the question whether plaintiffs were entitled to counsel fees for successful prosecution of an earlier appeal dealing with the fee issue. The entitlement to fees was based on a settlement agreement in an antitrust case, and the panel therefore characterized the question as one of contract interpretation; it left the question open for the district court on remand.

Two months later, the Court en banc decided *Lindy II,* in which it addressed the propriety of an award for services relating to the fee application where entitlement to the fee award was based on " 'the historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from the other parties enjoying the benefit' " (540 F.2d at 110, quoting *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (footnote omitted)). The court noted that this "equitable fund doctrine" on which entitlement was based was "analogous to an action in quantum meruit" in that it involved creation of a fund by an individual acting for the benefit of others and the seeking of compensation for performance of that service. 540 F.2d at 110, quoting *Lindy I,* 487 F.2d at 165. It added that, "[g]enerally, where litigation involves the competing interests of claimants to a common fund, no attorneys' fees should be awarded" because " 'if the interests are in conflict, success for one side means no benefit for the other and for a charge against a fund a benefit is required.' " 540 F.2d at 110, quoting Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds,* 87 Harv.L.Rev. 1597, 1638 (1974) (footnote omitted). Applying that reasoning to the facts before it, the Court held:

"Services performed in connection with the fee application are necessary to the attorney's recovery. They benefit *him,* for without them, the attorney cannot, since *Lindy I,* recover. But such services do not benefit the *fund*—they do not create, increase, protect or preserve it. Accordingly and in the circumstances of this case, we accept the prevailing rule for litigation involving the competing interests of claimants to a common fund. . . . There being no benefit to the fund from services performed by appellees in connection with their fee application, there should be no attorneys' fee award from the fund for those services." 540 F.2d at 111 (emphasis in original).

The Court limited its holding to the facts before it. *See id.*

In the wake of *Lindy II,* decisions in this Court are in conflict. At least two members of the Court have found *Lindy II* distinguishable since it was based on unique policies underlying the equitable fund doc-

---

5. In *Finney v. Hutto,* 548 F.2d 740 (8th Cir. 1977), *aff'd,* 437 U.S. ——, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), the Court of Appeals for the Eighth Circuit considered an appeal raising issues dealing with both the merits of the case and the propriety of an award by the district court of attorneys' fees to the plaintiffs. The Court of Appeals affirmed, and awarded the plaintiffs additional counsel fees for services performed on appeal. The Court of Appeals did not state that the additional fees would be apportioned to compensate only for appellate services relating to the merits, and it therefore appears that compensation was allowed for appellate litigation of the fee issue. In the Supreme Court, the question presented was whether the fee award was permissible in light of the Eleventh Amendment, since the party against which the award was assessed was the Arkansas Department of Correction. The Supreme Court upheld the award. The question whether the award should have included compensation for litigation related to the fee was not presented, however.

trine which are inapplicable when fee awards are statutorily authorized. *See White v. Beal,* 447 F.Supp. 788, 796 n.11 (E.D.Pa.1978) (Van Artsdalen, J.); *Mental Patient Civil Liberties Project v. Hospital Staff Civil Rights Committee,* 444 F.Supp. 981, 986–87 (E.D.Pa.1977 (Newcomer, J.). At least one member, Judge Fullam, has found *Lindy II* controlling. *See Commonwealth of Pennsylvania v. O'Neill,* 431 F.Supp. 700, 708–09 (E.D.Pa.1977), *aff'd mem.,* 573 F.2d 1301 (3d Cir. 1978). The Court of Appeals' summary affirmance in Judge Fullam's case was on the appeal of the defendants; apparently, the plaintiffs did not appeal the ruling excluding fees for time spent on the fee application. One of the most recent discussions of this issue is that of Judge Higginbotham in *Meisel v. Kremens* [Civil No. 74–1594, slip op. 11–13] (E.D.Pa. Apr. 21, 1978). The opinion was delivered as a district court decision although Judge Higginbotham had already been elevated to the Court of Appeals and, indeed, had sat on the panel that handed down the summary affirmance in *Commonwealth of Pennsylvania v. O'Neill, supra.* Judge Higginbotham wrote:

"In light of this Circuit's recent affirmance of *Commonwealth of Pa. v. O'Neill,* 573 F.2d 1301 (filed March 1, 1978), I find that plaintiff is not entitled to compensation for time spent on the fee application. Judge Fullam, in *O'Neill, supra,* held that under the authority of *Lindy II,* 540 F.2d at 111, no award for time spent on the petition of fees was permissible. *Mental Patients Civil Liberties Project, supra,* reached a contrary conclusion. Judge Newcomer found the analysis in *Lindy II,* limited to cases where a common fund was created and the fees would be paid from that fund. Where the defendant would pay the attorney's fees award Judge Newcomer said that *Lindy II* was not controlling and time spent on the fee application was compensable. . . . Judge Newcomer's analysis presents compelling reasons why plaintiffs should not, as a rule of law, bear the costs for litigating the counsel fees issue. Bearing in mind this Circuit's urging that the dis-

trict court should determine on the facts of each case what a reasonable fee would be, I find another reason why the *Lindy II* analysis disallowing recoveries of counsel fees for time spent on a fee application should be followed here. In this case the defendant is not a private party but the state. In a prior opinion, I found that the Eleventh Amendment posed no bar against an award of counsel fees under the Fees Act; however, a proper consideration in determining the reasonableness of an award after an objective evaluation of counsel's services has been made is who will pay the counsel fee. In this case, because the payment will most likely be derived from public funds an award for time spent in the fee application is unwarranted. . . . Permitting recovery for time spent in the litigation of the case provides adequate incentives to ensure the vindication of constitutional rights. By limiting the award in this case a balance can be struck to protect both individual rights and public funds." [slip op. at 11–13].

■ There are policy considerations on both sides of this question. Award of fees for time spent in making the fee application and litigating the fee issue furthers the general aim of the Fees Act of removing financial disincentives to bring suit as a "private attorney general." *Mental Patients Civil Liberties Project, supra,* 444 F.Supp. at 987. In particular, it prevents the losing party from "dissipat[ing] the incentive provided by an award through recalcitrance and automatic appeals." *Souza, supra,* 564 F.2d at 614. On the other hand, it is important to remember that award for the fee application time "inures only to the benefit of counsel." *Clanton v. Allied Chemical Corp.,* 416 F.Supp. 39, 43 (E.D.Va. 1976). Automatic compensation for the time provides a vast potential for overreaching, since there is little to prevent plaintiff's counsel from trying to inflate the award by engaging in protracted litigation of the fee issue. On balance, I believe that in computing the objective value of counsel's services, time spent on the fee applica-

tion and fee litigation should not be included; rather, compensable time should be limited to that providing direct benefits to the plaintiff. At a later stage of the computation process, when the objective value is adjusted to take into account other factors bearing on reasonableness, the court might consider whether an additional amount above the objective value should be awarded for time spent on the fee issue because the particular facts before it make it unreasonable not to compensate for the additional time. This approach comports with Judge Higginbotham's view that the question of compensation for fee application time should be considered in the context of the court's obligation to "determine on the facts of each case what a reasonable fee would be." *Meisel, supra* [slip op. at 12]. *See also Souza, supra,* 564 F.2d at 614. Deferring consideration of this item from the objective value determination stage to the adjustment stage of the computation process places the burden on the fee applicant's counsel to prove that award for fee application time is reasonable because of the particular facts of the case; that burden of proof allocation should help to alleviate the potential for overreaching. I therefore will not include the 4.25 hours spent on the fee application in determining the objective value of the services of Keown's attorney in this case.

█ The remaining entries on Robert Keown's fee application refer to services such as research, conference attendance, and trial preparation, that most likely are compensable insofar as they relate to Robert Keown's case against Storti. They are not compensable, however, insofar as they relate to Isabel Keown's case or to Robert Keown's case against the Evanses. In *Hughes v. Repko, supra,* the Court of Appeals considered proper computation of a fee award in a case in which the plaintiffs sued a husband and wife and prevailed only on one claim against the wife. It stated:

"It is clear to us that the fee-petitioner cannot be treated as the prevailing party to the extent he has been unsuccessful in asserting a claim. This rule, of course,

would be applicable regardless of the number of parties. Any other interpretation would run counter to the spirit of the [Civil Rights Attorney's Fees] Awards Act provision that attorney's fees should be awarded to the 'prevailing' party.

. . . . .

Thus, in calculating the lodestar [*i. e.,* the objective value of the attorney's services] in connection with the successful claims, the district court should give the petitioner credit only for the hours of legal service reasonably supportive of such claims. In evaluating what hours are reasonably supportive, we believe *Lindy II* and *Merola II* require the district court to determine not only the number of hours actually devoted to the successful claims, but also whether it was reasonably necessary to spend that number of hours in order to perform the legal services for which compensation is sought. The burden of persuasion must rest on the petitioner to demonstrate to the court the number of hours attributable to the successful claim, and also to demonstrate that the number of hours so attributable was reasonably necessary to perform the work at issue.

Implicit in our analysis is the recognition that legal services fairly devoted to successful claims are compensable even though those very same legal services also supported the prosecution of the unsuccessful claims. In this case, for example, many of the same legal services required to prosecute the several claims against the two defendants might have been required in any event had the plaintiffs chosen only to pursue the claim that did prove successful, i. e., the § 1982 claim against defendant, Mrs. Repko. Consequently, *an unanalyzed allocation of hours will not be permissible in arriving at the lodestar.*" 578 F.2d at 487 (emphasis added).

It is conceivable that some of the time for which award is sought was devoted exclusively to the claims of Isabel Keown (*e. g.,* research of the question whether, on the facts of this case, she was "arrested" by

Storti) or to the claims against the Evanses (*e. g.,* preparation of a conspiracy case against them). Under *Hughes,* that time is not compensable. Since there is no basis in the fee petition for determining whether this is so, and since "an unanalyzed allocation of hours [is] not . . . permissible", a hearing will have to be held to determine the allocation.[6]

 The second component of the objective value determination is the hourly rate. The rate fixed must be a reasonable one, "taking account of the attorney's legal reputation and status (partner, associate)," as well as the type of work performed. *Lindy I,* 487 F.2d at 167. These matters can be assessed without expert testimony. *Id.* at 169. The fee petition requests a rate of $50 per hour, and considering the pertinent factors, I conclude that that is a reasonable rate for the work performed in this case. It is comparable to that generally charged in the Philadelphia area.

Once a hearing has been held to determine compensable hours, the $50 rate will be multiplied by the number of hours to produce the objective value of counsel's services.

### 2. *Adjustments*

 Under the *Lindy* rules, once an objective assessment of the reasonable value of the attorney's services has been made, it can be adjusted for certain subjective factors. The two factors noted in the *Lindy* cases are the contingent nature of success, which may be used to increase the award, and the quality of the attorney's work, which may be used to increase or decrease the award. *Lindy I,* 487 F.2d at 167–69; *Lindy II,* 540 F.2d at 116–18; *Hughes,* 578 F.2d at 487–88.[7] Although a court apparently has discretionary power to make this adjustment on its own initiative, usually it will be made on the motion of one of the parties. *See Lindy II,* 540 F.2d at 118.

None of the interested parties to this case have requested such an adjustment based on these factors, and I see no grounds for compelling adjustment on my own motion.

 Apart from the adjustment factors mentioned in *Lindy,* the objective value must be adjusted to take into account the mandate of the Fees Act that the award be "reasonable." *Hughes,* at 487–88. The Congressional reports accompanying the Act mention a number of factors to be considered in judging reasonableness, *e. g.,* "the time and labor required, the novelty and difficulty of the questions involved, the skill needed to present the case, the customary fee for similar work, and the amount received in damages, if any." H.R.Rep.No. 94–1558, 94th Cong., 2d Sess. 8 (1976), *quoted in Hughes,* at 488 n. 7; *see* S.Rep.No.94–1011, 94th Cong., 2d Sess. 6, *reprinted in* [1976] *U.S.Code Cong. & Admin.News,* pp. 5908, 5913. *See also Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974) (listing eleven factors for consideration), cited with approval in H.R.Rep.No. 94–1558, *supra,* at 8, and S.Rep.No.94–1011, *supra,* at 6. Another factor that might be considered, although the question is less clear, is the respective parties' financial ability to pay for the attorney's services. *See Hughes,* at 487–88 (opinion of the Court), 490 (Rosenn, J., concurring). In addition, as I already have noted, at this stage the court may consider whether, on the particular facts before it, reasonableness demands that the fee award include compensation for time spent on the fee application. Finally, in light of Congress' purpose in enacting the Fees Act, the court must "evaluate the fee to be awarded in light of the important substantive purposes of the Civil Rights Act . . . upon which plaintiffs relied." *Id.* at 489 (opinion of the Court). As Judge Garth explained in a separate opinion in *Hughes,*

"[T]he Civil Rights Attorney's Fees Awards Act is designed to give persons

---

6. Of course, in lieu of a hearing, the parties may, if they desire, create a record through stipulations or the filing of affidavits as to those issues requiring further evidence.

7. The amount reached as a result of these adjustments has been called the "*Lindy* amount." Further adjustment, using factors not mentioned in *Lindy,* has been called "post-*Lindy* discretionary adjustment." *Hughes, supra,* at 491–92 (Garth, J., concurring).

who are victims of civil rights violations effective access to the judicial process. *See,* H.R.Rep.No.94–1558, 94th Cong., 2d Sess. 1 (1976). The Act is also intended to enhance the enforcement of the Civil Rights Act, which depends heavily on private enforcement, and to grant private citizens 'a meaningful opportunity to vindicate important Congressional policies which these laws contain.' S.Rep.No.94–1011, 94th Cong., 2d Sess. 2, *reprinted in* 5 [1976] U.S.Code Cong. & Admin.News 5908, 5910. Thus, recognizing the 'private attorney general' policy behind the Awards Act, the district court might consider, *inter alia*: the importance of the constitutional right and congressional policy which has been vindicated; the number of citizens who have been benefited or whose rights have been vindicated (either as class members or through *stare decisis*); the extent of the constitutional violation which has been remedied (*i. e.,* how widespread or pervasive was the civil rights violation); whether the attorney has successfully advanced a novel theory or interpretation; the extent to which the public interest has been served." *Id.* at 492 n. 5 (Garth, J. concurring); *accord, id.* at 490–91 (Rosenn, J., concurring).

As the Court of Appeals has observed, many of these factors, particularly those relating to the reasonableness of the award in the abstract, apart from the special policy considerations underlying the Fees Act, will already have been considered by the court in computing the objective value of counsel's services and making the *Lindy* adjustments for contingency and work quality. *Id.* at 488 (opinion of the Court).

■ None of the parties has requested adjustment of the amount set forth in Robert Keown's petition to conform to the reasonableness standard. Nevertheless, I believe that a downward adjustment of the objective value of counsel's services will be necessary. This case vindicated the rights of only one person—Robert Keown. It was not a class action. It did not produce any new law that, through *stare decisis,* will greatly benefit others. The violation that was remedied was not widespread or pervasive; indeed, the jury found that defendant Storti acted unlawfully only with respect to Robert Keown and not as to his wife. Although redress of any civil rights violation advances the public interest, the advancement in this case was minimal. The $2,500 damage award, which, in my view, was far in excess of proven compensatory damages, provided the plaintiff more than full compensation for his injury. A majority of the panel in *Hughes* has intimated that when facts such as these are present, the fee award should be reduced. *Hughes,* at 490–91 (Rosenn, J., concurring), 491–92 (Garth, Jr., concurring). I find no countervailing factors compelling an offsetting upward adjustment. In particular, on the facts of this case there are no special circumstances compelling inclusion of compensation for time spent on the fee application.[8] Overall, therefore, I conclude that a downward adjustment of the amount determined to be the objective value of counsel's services should be made. The amount of that adjustment must await determination of the objective value after the hearing on compensable hours.

## II. *The Evanses' Motion*

### A. *Entitlement*

■ It cannot be doubted that Mr. and Mrs. Evans are "prevailing parties" for pur-

---

8. I respectfully disagree with the view that reasonableness demands compensation for fee application time unless special factors counselling against such compensation are shown. As already stated, in my view the opposite presumption should prevail. Thus, the fact that in this case, unlike *Meisel, supra,* the fee award apparently will not be paid by the government is not determinative. Rather, the controlling consideration is that the fee petitioner has presented no evidence that special considerations applicable to this case favor compensation for fee application time. The case was brought for damages, rather than equitable or declaratory relief, and the financial disincentive problems mentioned in *Mental Patient Civil Liberties Project, supra,* 444 F.Supp. at 987, are not present. There has not been a bad faith effort by the losing party to "dissipate the incentive provided by an award through recalcitrance and automatic appeals" (*Souza, supra,* 564 F.2d at 614).

poses of the Fees Act. They successfully defended all claims asserted against them. The question, therefore, is whether I should exercise discretion to award the Evanses counsel fees.

The legislative history of the Fees Act makes clear that Congress intended prevailing defendants to recover counsel fees under the Act only in cases in which it is shown that the plaintiff's suit "was clearly frivolous, vexatious, or brought for harassment purposes." S.Rep.No.94–1011, 94th Cong., 2d Sess. 5, *reprinted in* [1976] *U.S.Code Cong. & Admin.News*, pp. 5908, 5912, citing *United States Steel Corp. v. United States*, 385 F.Supp. 346 (W.D.Pa. 1974), *aff'd*, 519 F.2d 359 (3d Cir. 1975). This rule has been followed by the Supreme Court with respect to a similar fee award authorization statute (*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (Civil Rights Act of 1964, Title VII)), and the Court of Appeals specifically has held that it is applicable to cases under the Fees Act (*Hughes, supra*, 578 F.2d at 489). Thus, as the Supreme Court stated in *Christiansburg*, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." 434 U.S. at 422, 98 S.Ct. at 701, *quoted in Hughes*, at 489. I believe that under this standard the Evanses are entitled to recover.

When plaintiffs filed the complaint in this action on September 21, 1976, the only allegations made against the Evanses were the following:

"6. On or about November 13, 1976, plaintiff, Robert G. Keown, *pursuant to an invitation of the defendants, JAMES EVANS and MRS. JAMES EVANS,* was in the said defendants' home at 2427 Sierra Road, Plymouth Township, Pennsylvania. The purpose of the visit was to attempt to consummate a sale of the advertising services sold by plaintiff, ROBERT G. KEOWN's said employer.

7. A few minutes after plaintiff, ROBERT G. KEOWN, arrived in the said defendants' home the defendant, ROBERT STORTI, appeared at the door of the home dressed in plain clothes accompanied by an uniformed policeman. Defendant, ROBERT STORTI, announced that he was a police officer and then falsely charged that plaintiff, ROBERT G. KEOWN, was engaged in a fraudulent sales scheme and advised said plaintiff that he was under arrest. The arresting officer had no warrant, nor did they assert probable cause for an arrest without a warrant. Plaintiff's request to call an attorney was denied by defendant, ROBERT STORTI.

8. Plaintiff, ISABEL S. KEOWN, who had been sitting in her automobile outside the defendant EVANS' home waiting for her husband, was then ordered by defendant, ROBERT STORTI, to come into the house and was notified that she was under arrest as an accomplice of her husband in his fraudulent scheme. While still in the said home plaintiff, ROBERT G. KEOWN, was searched by defendant, ROBERT STORTI, and *defendant, ROBERT STORTI, ordered defendant, MRS. JAMES EVANS, to search plaintiff, ISABEL S. KEOWN.*

. . . . .

19. Defendants, *JAMES EVANS and MRS. JAMES EVANS, unlawfully conspired with and aided and abetted defendant, ROBERT STORTI,* under the color of law to deprive plaintiffs of their constitutional rights under Articles IV and XIV of the United States Constitution, as a result of which plaintiffs suffered substantial damages for which said defendants are liable, including loss of earnings, mental and emotional distress, humiliation and embarrassment.

20. Because *defendants, JAMES EVANS and MRS. JAMES EVANS' actions were unlawful, malicious, wilful and wanton,* plaintiffs are also entitled to recover from said defendants punitive damages and attorney's fees and costs incurred by them." (Emphasis added.)

The allegations provided no facts in support of the conclusory allegation of conspiracy. As the case developed, it became apparent that plaintiffs' theory was that Storti and the Evanses had set a trap for plaintiffs by inducing the plaintiffs to go to the Evanses' home so that Storti could make a false arrest there for unlicensed solicitation.

On December 29, 1976, plaintiffs' counsel took Storti's deposition, and on April 27, 1977, he deposed the Evanses. Plaintiffs make much of asserted inconsistencies in the deposition testimony, but review of that testimony discloses that the "inconsistencies" were very minor or nonexistent. For example, plaintiffs point to Mr. Evans' deposition testimony that he called the police while plaintiffs were at his home but could not recall whether he specifically asked for defendant Storti. They contrast this with Storti's testimony that the call to the police station asked for Storti by name. It should not have to be pointed out that the fact that one person remembers a detail but another does not is not a testimonial inconsistency, but merely a disparity in recollection. Other examples cited by plaintiffs do indicate some discrepancies, but, on the whole, they were not very indicative of the presence of a conspiracy. Rather, a reading of the depositions in their entirety leaves the clear impression that the only reason for the Evanses' involvement in the matter was their concern that Keown might not be operating a legitimate business and their desire to check into Keown's credentials before purchasing his advertising services. There was no evidence of a conspiracy with Storti to deprive the Keowns of their rights.

Conspiracy is a matter highly dependent on factual inferences, and therefore such claims are not readily amenable to pre-trial dismissal. When the case did get to trial and plaintiffs presented their evidence, however, it was clear that they had no case against the Evanses. There was no evidence of knowing involvement in a conspiracy to deprive the Keowns of their rights. Finding that there was no basis for submission of the case to the jury, I entered a directed verdict in favor of the Evanses.

■ I believe that there never was a substantial case against the Evanses. The claim against them was "frivolous, unreasonable, [and] groundless" (*Christiansburg*, 434 U.S. at 422, 98 S.Ct. at 701). If this was not clear at the start of the case, it at least should have been clear after discovery. I hold that the Evanses are entitled to counsel fees under the Fees Act.

B. *Amount*

1. *Objective assessment of reasonable value*

■ The Evanses request compensation for 36.5 hours of their attorney's time at $50 per hour. At the outset, I note that the Evanses' submission is in a defective form. The Court of Appeals has emphasized that fee requests should be made with affidavits or other evidentiary submissions in its support. *Merola I*, 493 F.2d at 294 n. 7; *Merola II*, 515 F.2d at 167 n. 2. The itemization of hours and specification of the rate submitted by the Evanses was not done by affidavit. I shall require that this defect be remedied.

Assuming that the request made by the Evanses can be supported by an affidavit, I conclude that the hours listed are reasonable. All of the enumerated items are related to this case and none of them appear inappropriate.

■ With respect to the hourly rate, I conclude that $50 per hour is a reasonable rate for the work performed, just as it was a reasonable rate for plaintiffs' counsel. Multiplying this rate by the 36.5 hours, the objective value of counsel's services is $1,825.

2. *Adjustments*

None of the parties have requested adjustment based on contingency, work quality, or reasonableness. I see no reason for adjustment on the basis of any of these factors. I therefore shall award the Evanses counsel fees in the amount of the objective value, $1,825.

### III. *Storti's Motion*

■ Storti was the prevailing party insofar as he successfully defended against Isabel Keown's claim. Nevertheless, in light of the entitlement rules discussed with respect to the Evanses' motion, he may not recover counsel fees. I do not believe that Isabel Keown's claim against him was frivolous or vexatious or had any of the qualities necessary for award of fees to a prevailing defendant under the Fees Act. Isabel Keown presented a substantial claim as to whether Storti had wrongfully arrested her, and there was evidence on which the jury could have resolved it either way. Storti's motion for attorney's fees therefore will be denied.