John R. SEK

v.

BETHLEHEM STEEL CORPORATION.

Civ. A. No. 74-977.

United States District Court, E. D. Pennsylvania.

Jan. 9, 1979.

John R. Sek, pro se.

Marc J. Sonnenfield, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

This Title VII action was formerly assigned to the late Senior Judge Thomas J. Clary. At the close of the trial, Judge Clary entered judgment for defendant Bethlehem Steel Corporation. *See* 421 F.Supp. 983 (E.D.Pa.1976), *aff'd mem.,* 565 F.2d 153 (3d Cir. 1977), *cert. denied,* 436 U.S. 920, 98 S.Ct. 2268, 56 L.Ed.2d 761 (1978). Judge Clary also determined that Bethlehem Steel Corporation, as the "prevailing party" in this action, 42 U.S.C. § 2000e–5(k) (1976), was entitled to an award of attorneys' fees. *See generally Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). His opinion, dated October 26, 1976, stated in part:

> "An order will issue directing the parties to confer and attempt to agree to reasonable attorney's fees in view of the financial circumstances of the plaintiff. If the parties cannot agree, attorney's fees will be fixed in further proceedings." 421 F.Supp. at 994.

The parties never reached an agreement, however, for plaintiff, who had proceeded *pro se* throughout this litigation, repeatedly resorted to the Court of Appeals for the Third Circuit, as well as the Supreme Court of the United States, in an effort to overturn Judge Clary's order. On October 21, 1977, the court of appeals affirmed Judge Clary's ruling by judgment order, and awarded costs in connection with the appeal to Bethlehem Steel.[1] Document No. 67. Plaintiff then sought a writ of certiorari from the Supreme Court. On January 24, 1978, Bethlehem Steel filed its petitions for assessment of attorneys' fees and for payment of costs awarded by the court of appeals. Documents Nos. 74, 75. On January 30, 1978, while plaintiff was still pursuing his remedies in the Supreme Court, this case was reassigned to me, due to Judge Clary's death in the intervening time. Document No. 78. The Supreme Court denied plaintiff's petition for a writ of certiorari on May 22, 1978. 436 U.S. 920, 98 S.Ct. 2668, 56 L.Ed.2d 761.

To obtain information in support of a reasonable fee award, counsel for Bethlehem Steel deposed plaintiff on July 7, 1978, regarding his financial circumstances. Counsel then filed that deposition (Document No. 94) with the Court, along with affidavits concerning the number of hours devoted by counsel to these proceedings in the district court, in the court of appeals, and in the Supreme Court.

On October 25, 1978, after the foregoing materials had been filed with the court, the courtroom deputy mailed notice to both parties that a hearing would be held at 10:00 a. m. on Thursday, November 9, 1978, in connection with Bethlehem Steel's two outstanding petitions. The courtroom deputy also spoke to plaintiff by telephone on two occasions, and confirmed that plaintiff would be present at the scheduled hearing. However, plaintiff failed to appear at 10:00 a. m. on the appointed day. At approximately 11:00 a. m., the courtroom deputy placed a telephone call to plaintiff's residence, and plaintiff's wife advised him that plaintiff had sent a letter to the court by certified mail, stating that plaintiff would be unable to attend due to illness. No such letter was received during the working day of November 9.[2] When the courtroom deputy reported that plaintiff would not be present at the hearing, counsel for Bethlehem Steel handed up various exhibits in

---

[1]. Bethlehem Steel then moved for an award of attorneys' fees in connection with the appeal. The court of appeals entered an order (dated November 14, 1977) denying the motion "without prejudice to its presentation to the district judge who will determine the amount of fees to be awarded to the prevailing party in the district court, and who will in that proceeding determine the appellant's financial condition." Document No. 69.

[2]. A certified mail letter dated November 8, 1978, was delivered to the court on Monday, November 13, 1978. In this letter, plaintiff requested that he be excused from the November 9 hearing because of "illness," and asked that the financial circumstances reflected in his deposition be given "full weight" in my determination of the award of attorneys' fees. Document No. 97.

support of its two petitions. Several weeks later, counsel submitted a supplementary affidavit bearing on the petition for attorneys' fees. Document No. 96. Under the circumstances, I shall consider both petitions based on the present record, which consists of plaintiff's deposition and the various exhibits and affidavits submitted by Bethlehem Steel.

I note in passing that Bethlehem Steel has also submitted a bill of costs in connection with the trial of this case. In accordance with Local Rule 38, the Clerk of this court will tax costs in the first instance. *See* E.D.Pa.R. 38.

### PETITION FOR PAYMENT OF COSTS AWARDED BY THE COURT OF APPEALS

On February 24, 1977, shortly after plaintiff filed the notice of appeal from Judge Clary's order, he deposited a check in the amount of $250.00 in the Registry of this court as security for costs on appeal. *See generally* Fed.R.App.P. 7. In its judgment order dated November 21, 1977, the court of appeals specifically taxed costs totalling $150.60 in favor of Bethlehem Steel. (This sum represented costs incurred in printing the brief and portions of the appendix thereto.) It appears that all that I am called upon to do in this connection is to enter an order directing the Clerk of this court to pay that amount to Bethlehem Steel, pursuant to the court of appeals' determination. I will enter an order to that effect.

### PETITION FOR AWARD OF ATTORNEYS' FEES

■ In its petition for assessment of attorneys' fees, Bethlehem Steel seeks an award based on the reasonable value of services rendered by its counsel both for the trial of this case and the appeal taken by plaintiff. As I noted earlier, Judge Clary determined that Bethlehem Steel is entitled to a fee award with respect to the trial of this case, and the court of appeals affirmed that determination by judgment order. As for the petition for fees relating to the appeal, however, no such determination has yet been made. Bethlehem Steel sought such an award following the affirmance of Judge Clary's order, but the court of appeals denied that request "without prejudice to its presentation to the district judge." Document No. 69; *see* note 1 *supra*. After examining the entire file in this case, I believe that Bethlehem Steel, as the "prevailing party" on appeal, is entitled to a fee award for the appeal. Once Judge Clary determined that plaintiff's legal claim was so frivolous as to justify a fee award to the prevailing defendant, plaintiff's persistent efforts to secure a reversal on appeal were likewise frivolous. Accordingly, a fee award for the appeal is justified here. *See, e. g., Kutska v. California State College,* 564 F.2d 108 (3d Cir. 1977).

■ The Court of Appeals for the Third Circuit has prescribed a detailed method for computing an award of attorneys' fees. *See, e. g., Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (1973) (*Lindy I*), 540 F.2d 102 (1976) (en banc) (*Lindy II*); *Keown v. Storti,* 456 F.Supp. 232, 236 (E.D. Pa.1978) (collecting cases). First, the district court must determine "the number of hours reasonably devoted to the claims upon which [the prevailing party] was successful." *Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208, 1214 (3d Cir. 1978). Next, the court must determine "the hourly rate that reasonably should be charged for those services." *Keown v. Storti, supra,* 456 F.Supp. at 237. The number of hours, multiplied by the hourly rate, determines the so-called "lodestar," which is the starting point in assessing a reasonable attorneys' fee. *E. g., Hughes v. Repko,* 578 F.2d 483, 486–88 (3d Cir. 1978) (separate opinion of Seitz, C. J.); *id.* at 489–91 (Rosenn, J., concurring); *id.* at 491–93 (Garth, J., concurring). This figure may then be augmented or diminished, where other aspects of the case warrant such an adjustment. *See, e. g., Shlensky v. Dorsey,* 574 F.2d 131, 150–51 (3d Cir. 1978); *Keown v. Storti, supra,* 456 F.Supp. at 241 (*Lindy I* and *Lindy II* authorize consideration of "the

contingent nature of success, which may be used to increase the award, and the quality of the attorney's work, which may be used to increase or decrease the award"). In this case, pursuant to Judge Clary's order, the so-called "lodestar" is to be adjusted in light of plaintiff's financial circumstances. *See generally Hughes v. Repko, supra,* 578 F.2d at 490 (Rosenn, J., concurring) (district court may exercise its discretion and adjust the "lodestar" based on the losing party's ability to pay).

■ Although counsel for Bethlehem Steel have furnished the court with an affidavit stating that Bethlehem Steel paid more than $30,000 in counsel fees to the firm of Morgan, Lewis & Bockius in connection with this case, both parties agree that no "reasonable" fee award here, in light of plaintiff's financial circumstances, would even approach that amount. Indeed, Bethlehem Steel, in its petition for counsel fees, seeks only $7,500, which is less than one-fourth of the amount it actually paid out. Recognizing that plaintiff's ability to pay, rather than the reasonable value of counsel's services, will as a practical matter be the primary determinant of the fee award here, counsel for Bethlehem Steel have declined to specify the actual hourly rates used in billing for their services in this case. Instead, counsel have submitted "minimum" hourly rates that are well below the prevailing hourly rates for attorneys of their stature, and they fully expect that the resulting "lodestar" figure here will be less than the reasonable value of their services, even before that figure is reduced based on plaintiff's ability to pay. Given the unique facts presented here, I believe that this somewhat unorthodox approach need not prevent me from making an appropriate fee award here. *Cf. Rodriguez v. Taylor,* 569 F.2d 1231, 1247–48 (3d Cir. 1977)(discussing alternate means of valuing work performed by legal services attorneys who have no hourly billing rates), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). The record here is sufficient to support a determination of a *minimum* reasonable value for counsel's services, and I shall then adjust that figure in light of plaintiff's financial circumstances.

*Hours Expended*

Marc J. Sonnenfield, Esquire, who devoted more hours to this case than did any other attorney at Morgan, Lewis & Bockius, executed the supplementary affidavit that analyzes the hours devoted to this case by various attorneys and paralegals working with that firm. Document No. 96. That affidavit reveals, first of all, that Mr. Sonnenfield devoted a total of 261.7 hours to the trial and appeal of this case, while Arthur R. Littleton, Esquire, a partner in Morgan, Lewis & Bockius, devoted a total of 68.15 hours to the case. Various other attorneys devoted 16.5 hours to the case, while various paralegals devoted 127.7 hours to the case.

The affidavit also breaks down the total hours expended into four time periods. During the first period, from May 23, 1974 through January 30, 1975, attorneys and paralegals at the firm reviewed plaintiff's complaint and prepared an answer, responded to plaintiff's interrogatories and discovery requests, prepared for and attended five depositions that plaintiff conducted, prepared for and took plaintiff's deposition, and attended a pretrial conference before the United States Magistrate to whom the case was assigned. Mr. Littleton devoted 18.75 hours to these activities, while Mr. Sonnenfield devoted 29.3 hours and various other attorneys devoted 2.05 hours. Various paralegals devoted 6.3 hours to these activities.

During the second period, from February 7, 1975 to March 24, 1976, attorneys and paralegals at the firm prepared a motion to dismiss and a supporting memorandum of law, as well as supplemental and reply memoranda on that motion, prepared a motion to strike plaintiff's demand for a jury trial and a supporting memorandum of law, prepared a motion for leave to amend the answer and a supporting memorandum of law, and attended two pretrial conferences. Mr. Littleton devoted 19.65 hours to these activities, while Mr. Sonnenfield devoted 72 hours to these activities and various other

attorneys devoted 5.75 hours. In addition, various paralegals devoted 50 hours to these activities.

During the third period, from April 5, 1976 to December 31, 1976, attorneys and paralegals at the firm prepared for trial, met with witnesses, prepared a trial brief, a request for findings of fact and conclusions of law, and a motion to quash a subpoena, prepared for and (in the case of Messrs. Littleton and Sonnenfield) attended the two-day trial before Judge Clary, prepared post-trial briefs, and prepared additional requests for findings and conclusions. Mr. Littleton devoted 29.25 hours to these activities, while Mr. Sonnenfield devoted 79.8 hours and various other attorneys devoted 8.05 hours. In addition, various paralegals devoted 49.55 hours to these activities.

Finally, during the period from January 3, 1977 to November 15, 1977, attorneys and paralegals at the firm reviewed plaintiff's brief on appeal, prepared the brief for appellee, reviewed plaintiff's reply brief, researched the question of mootness, responded to various motions filed by plaintiff, reviewed the judgment order issued by the court of appeals, prepared a bill of costs, and prepared a motion for counsel fees on appeal. Mr. Littleton devoted .50 hours to these activities, while Mr. Sonnenfield devoted 80.6 hours and various other attorneys devoted .65 hours. In addition, various paralegals devoted 21.85 hours to these activities.

After reviewing the entire file in this case, I am satisfied that the various attorneys and paralegals at Morgan, Lewis & Bockius reasonably expended the hours stated above in connection with each phase of this case. Accordingly, I see no reason to disallow any portion of those hours in computing the reasonable value of the firm's services.

### Hourly Rate

As I noted earlier, counsel for Bethlehem Steel have declined to furnish the court with the actual hourly rates used in billing for their services. The supplementary affidavit filed in support of this petition states:

"At all times material hereto, the hourly rates for Messrs. Littleton and Sonnenfield and for all other attorneys from Morgan, Lewis & Bockius who expended time in this matter were *not less than* $40 per hour, and the hourly rates for all paralegals who expended time in this matter were *not less than* $20 per hour." Document No. 96, ¶ 7 (emphasis supplied).

■ With respect to Messrs. Littleton and Sonnenfield, this "minimum" hourly rate of $40 per hour is eminently reasonable. To quote from the supplementary affidavit:

"3. Arthur R. Littleton was and is the attorney in charge of representation of defendant Bethlehem Steel Corporation in the above-captioned matter. Mr. Littleton graduated the University of Pennsylvania Law School in 1951 and was admitted to the Bar of the Supreme Court of Pennsylvania in 1952. He became associated with the law firm of Morgan, Lewis & Bockius on September 4, 1951 and was elected a partner effective October 1, 1961. Mr. Littleton is one of the most senior litigation attorneys in the firm, and has had substantial experience in labor law matters, in particular, in defending actions brought under Title VII of the Civil Rights Act of 1964."

The affidavit also reveals that Mr. Sonnenfield graduated from Harvard Law School in 1971, served as law clerk to Chief Judge Lord of this District, and became associated with Morgan, Lewis & Bockius in 1974. Although Mr. Sonnenfield was an associate throughout the course of this litigation, he was elected to partnership effective October 1, 1978. In light of the stature and experience of these attorneys, and given the type of work they performed here, I unhesitantly conclude that the "minimum" hourly rate of $40 is a reasonable one.

■ With respect to the unnamed other attorneys who devoted a total of 16.5 hours to this case, the record is devoid of information regarding their status at the firm or their individual reputations or areas of expertise. This deficiency in the record, of

course, makes my task somewhat more difficult. *See Lindy I, supra,* 487 F.2d at 167. Armed only with the knowledge that these persons are attorneys employed by Morgan, Lewis & Bockius, I am unwilling to approve as "reasonable" the "minimum" hourly rate of $40 suggested by counsel. I shall instead include the 16.5 hours devoted by these attorneys, at the rate of $30 per hour, in the so-called "lodestar" figure, realizing that this component of the "lodestar" probably represents the "minimum" reasonable value of their services.

█ Finally, with respect to the various paralegals who expended 127.7 hours to this case, I find that the "minimum" hourly rate of $20 is reasonable in light of the work that was performed here. *Accord, e. g., Dorfman v. First Boston Corp.,* 70 F.R.D. 366, 373–74 (E.D.Pa.1976) (Lord, C. J.).

### Hours Multiplied by Hourly Rate (the so-called "lodestar" figure)

Based on the figures as given above, the so-called "lodestar" figure is composed of 68.15 hours (Mr. Littleton) at $40 per hour, plus 261.7 hours (Mr. Sonnenfield) at $40 per hour, plus 16.5 hours (various unnamed attorneys) at $30 per hour, plus 127.7 hours (various paralegals) at $20 per hour. Thus, the so-called "lodestar" figure here is $16,-243.00. I emphasize that this figure represents a *minimum* reasonable value for the services rendered here, because defense counsel have elected to submit only the modest hourly rates already mentioned. This figure in no sense represents a determination that the substantially higher amount actually paid by Bethlehem Steel for services rendered in connection with this case was unreasonable.

**3.** While this opinion was being prepared, I received in chambers a certified mail letter (dated December 22, 1978) from plaintiff. In this letter, plaintiff stated that his employment was terminated on September 1, 1978, and that he had "no immediate prospect of employment and no viable means of support." Document No. 100. The letter was not notarized or sworn to, and plaintiff failed to send a copy to counsel for Bethlehem Steel.

### Adjustments

Nothing in the record suggests that this is an appropriate case for augmenting the so-called "lodestar" figure based on either (1) contingency or (2) quality. *See generally Shlensky v. Dorsey,* 574 F.2d 131, 150–51 (3d Cir. 1978). Rather, the only appropriate adjustment here is an adjustment for plaintiff's ability to pay. I therefore turn to a consideration of plaintiff's financial circumstances.

Plaintiff is married and has three children, whose ages (at the time of his July deposition) were ten and a half, nine, and three years. Plaintiff received a B.A. in sociology from Seton Hall University in 1965, and a master's degree in public administration from Pennsylvania State University in 1967. He began working for Bethlehem Steel in the summer of 1967, and he was terminated on November 27, 1970 as part of a reduction in force. Since June of 1978, plaintiff has been employed as a personnel manager for an unspecified concern in the Lehigh, Pennsylvania, area, and he earns $21,000 a year in that capacity.[3] Mrs. Sek has not worked since at least 1968. As reported in the Seks' joint income tax returns, their adjusted gross income for the years 1971 through 1977 was as follows:

| | |
|---|---|
| 1977 | $21,419.86 |
| 1976 | 18,066.41 |
| 1975 | 16,285.01 |
| 1974 | 15,797.21 |
| 1973 | 8,239.00 |
| 1972 | 8,303.72 |
| 1971 | 5,992.60 |

Plaintiff has no significant savings, owns no real estate, and holds no stocks or bonds. He has a modest amount of life insurance with an unspecified cash surrender value.

I have not revised the fee award, or my underlying arithmetic computation, in light of plaintiff's letter. The record before me demonstrates that plaintiff has the capacity to earn $21,000 a year, and I assume that plaintiff will be able to secure another position at a comparable salary. I emphasize that plaintiff has offered no explanation for his most recent termination, and that he has submitted no information bearing on his chances of securing employment in the future.

Plaintiff and his wife pay $330 per month as rent on their apartment. Their other routine expenses, as stated by plaintiff in Exhibit P–11, submitted at the time of his deposition, include food ($280 per month), numerous utilities ($137 per month), car payments ($112 per month), insurance payments ($34 per month), and payments on several revolving charge accounts ($120 per month). These items amount to some $660 per month. In addition, plaintiff owes some $600 to several department stores, and he is repaying these obligations at an unspecified rate. Finally, plaintiff and his family must pay for the services of an optician, an eye doctor, a dentist, a gynecologist, and a pediatrician, and these expenses apparently amount to an average of some $40 per month.

Plaintiff's annual salary of $21,000 can be expected to yield approximately $1,300 per month in take-home pay, once federal income tax, FICA employee tax, and Pennsylvania income tax are deducted. The family's basic recurring obligations, as summarized above, amount to $1,030 per month. With respect to the $600 owed to various department stores, I shall assume that this debt stems at least in part from such recurring expenses as the purchase of clothing, and I shall therefore treat the Seks' department store purchases as an additional recurring expense of $40 per month. Thus, the family's recurring obligations total $1,070 per month. I note, too, that several other categories of expenses, such as maintenance and repair of the family automobile, travel, recreation, etc., are not represented in Exhibit P–11.

In light of plaintiff's financial circumstances, I believe that the "minimum" reasonable value of counsel's services, which I have determined to be $16,243.00, must be sharply reduced in order to arrive at a reasonable fee award here. As I noted earlier, Bethlehem Steel seeks an award of $7,500.00 in attorneys' fees, but I believe that even that amount would be excessive and unreasonable in view of plaintiff's financial circumstances. In my view, a fee award of $4,500.00, payable in monthly installments of not less than $75, is reasonable under the circumstances.

This determination is, of course, a compromise. On the one hand, Bethlehem Steel, which has paid for services with a reasonable value of at least $16,243.00 and which has been awarded "a reasonable attorney's fee" in accordance with the statutory authorization, ought not to be unduly disadvantaged by the "accident" that plaintiff is a man of relatively modest means. On the other hand, Judge Clary exercised his discretion and specifically ruled that the fee award here must be reasonable *in light of* plaintiff's financial circumstances. The award that I have described above attempts to accommodate both considerations. The total amount of the award—$4,500.00—offers Bethlehem Steel a substantial portion of the "minimum" reasonable value of counsel's services in connection with this case. The method of repayment—monthly installments of not less than $75—should enable plaintiff to meet this obligation without overloading his family's resources, which are both modest and already largely committed. Under this approach, plaintiff will have the option of spreading his payments to Bethlehem Steel over a period of up to five years, if he chooses to make only the minimum payment each month. I considered a larger award, which would have been payable over an even longer period of time, but I concluded that it would be needlessly harsh to saddle plaintiff with such a long-term obligation.

Thus, plaintiff is to make monthly payments of not less than $75 to Bethlehem Steel until such time as the sum of $4,500.00 has been paid. Plaintiff shall make these payments no later than the 15th day of each month, beginning with the month of February, 1979. In the event that plaintiff fails to make a required payment, Bethlehem Steel may, after giving plaintiff ten days' notice by registered mail, repair to this court for the entry of a judgment against plaintiff for the full unpaid balance of this fee award. I shall retain jurisdiction over this matter.

The findings of fact and conclusions of law required by Rule 52(a) are set out in the foregoing opinion.