Albert R. LACY

v.

GENERAL ELECTRIC COMPANY.

Civ. A. No. 81–2958.

United States District Court,
E.D. Pennsylvania.

Dec. 13, 1982.

As Amended Dec. 22, 1982.

Margaret Boyce, Philadelphia, Pa., for plaintiff.

Morris Brooke, Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

BECHTLE, District Judge.

At the close of trial in this Title VII action and pursuant to the Court's direction, defendant General Electric Company ("G.E.") has petitioned for an award of attorney's fees. The Court requested that this petition be filed because the Court found that four of the plaintiff's six claims of racial discrimination associated with his employment were totally frivolous. These four claims represented approximately 90% of the evidence at the trial and the remaining two claims should probably have been included in the six, but they are so arguably close to being non-frivolous that the Court gave the plaintiff the benefit of the doubt. *See Lacy v. General Electric Company*, C.A. 81–2958 (Bench Opinion, September 24, 1982).

The Court does not believe it is necessary to again review the precise facts as to why the Court found the four claims in question to be frivolous. The Court made its findings during its Bench Ruling when all of the facts were known and considered by the Court. Suffice it to say that by adopting that ruling as the underpinning for this Memorandum and Order, it is perfectly plain from virtually every vantage point that the four claims in question were wholly without merit, even from the most generous interpretation of the plaintiff's version of the evidence. The best description of these claims is that they represent the plaintiff's version and his means of registering his personal disagreement and resistance to the clear terms of the collective bargaining agreement, including the labor-management mechanisms, adopted by *his* union and his employer to carry out that

agreement. The mechanisms and the agreement have been in force and in the main have succeeded as the parties to the collective bargaining agreement intended that they would succeed. These beliefs plaintiff holds, disguised in Title VII clothing, are simply what the plaintiff contends is a system for determining piece-rate wage calculation; promotion; seniority rights; lay-off rights; and inter-company assignment procedures, that is better than that agreed upon by his employer and his union and included by them in considerable detail in the collective bargaining documents. Disagreements in the application of the provisions of the collective bargaining agreement and the collateral documents have been and are resolved by the union and the employer through a grievance procedure that goes through several stages from the shop level to higher echelon levels in both the employer and the union organizations, and has been during the time covered by this suit relied upon by the union and the employer as the principal means of resolving disputes. Indeed, the plaintiff has availed himself many times of this procedure which, interestingly enough, has not been a successful course for the plaintiff to follow. Apparently faced with the inability to impose upon either the employer or his union his own views concerning certain employment conditions that did not pass the grievance process to his liking, the plaintiff sought out another avenue to quarrel with the employment arrangement. This technique was to engraft the concept of "racial discrimination" onto his general complaints and launch this Title VII case. Despite a claim of intentional racial discrimination, and presumed assurances in his pleadings and in the pre-trial preparation materials, racial discrimination conduct was nowhere to be seen nor indeed is there one word of evidence that would even suggest that the question of plaintiff's race played any part in any relationship or encounter between himself and his employer, or even his union or anyone else in the workplace.

This plaintiff is no stranger to litigation, so it cannot be said that this case was a new and different and hence, misunderstood area of adversary engagement. He has been in federal civil court in this district before and he has been engaged in an adversary atmosphere through the collective bargaining and grievance process with his employer on many occasions over a span of several years. By bringing this case that was totally groundless, the plaintiff has drawn the defendant, his employer, into a long, expensive, and tedious litigation experience, not to mention that in the process he has also drawn into the foray many blameless parties and witnesses who he caused to be dragged through this unnecessary gauntlet at considerable inconvenience and expense. It would be a disservice to the judicial process generally and to the civil rights laws specially to allow society to believe that this Court, by inaction or acquiescence, in some way put its stamp of approval on the plaintiff's performance in respect to this case. The Court has determined that the appropriate remedy is for the imposition of some share of the defendant's costs and fees in connection with this litigation upon the plaintiff under terms and conditions that will be fair yet just. There is authority for this approach to such matters and it is upon this authority that the Court relies. In *United States Steel Corp. v. United States,* 519 F.2d 359 (3d Cir.1975), the Third Circuit placed itself in the vanguard in accepting the theory that a prevailing Title VII defendant may be entitled to an award of attorney's fees. In considering what criteria should govern such an award, the court followed the approach of the district court below which had denied a fee award to a defendant on the grounds that the plaintiff's action had not been "unfounded, meritless, frivolous, or vexatiously brought." *Id.,* at 363. The Supreme Court subsequently upheld the concept that a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case. *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1977). Citing the Third Circuit's decision in *U.S. Steel* as a point of reference, the court held that a fee award to a successful defendant was appropriate if

the district court found "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. E.E.O.C., supra,* at 421, 98 S.Ct. at 700.[1]

The Third Circuit has referred to the *Christiansburg* rule in several recent cases. *See Mastrippolito and Sons, Inc. v. Smith,* 692 F.2d 1384, at 1386–87 (3d Cir.1982); *Luria Bros. & Co., Inc. v. Allen,* 672 F.2d 347, 358 n. 18 (3d Cir.1982); *Croker v. Boeing Co.,* 662 F.2d 975, 998 (3d Cir.1981); *Hughes v. Repko,* 578 F.2d 483, 489 (3d Cir.1978). None of these cases granted a fee award to a defendant, but it is important to note that this was because the district courts in those cases did not find that the actions before them were "frivolous, unreasonable, or groundless." On the other hand, in *Sek v. Bethlehem Steel Corp.,* 463 F.Supp. 144 (E.D.Pa.1979), the court did find that the plaintiff's Title VII claim was frivolous, and relying on *Christiansburg,* granted defendant a fee award. It is thus quite clear that prevailing defendants are entitled to an award of attorney's fees if the district court finds that the Title VII plaintiff's claim is so frivolous as to justify such an award.

A dominant purpose here is one of deterrence. Even in those cases where a remedy to the opposite party may in some way relieve the harm caused to that party, the need for deterrence is so crucial to the administration of justice that relief to the other party becomes a secondary consequence and not the primary goal of the Court. *See National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976). But here, following a trial, dismissal of plaintiff's claims arises out of the evidence and consequently a dismissal is not available to the Court to satisfy the compelling need to deter such a frivolous and groundless suit.

Consequently, the Court is clear to point out that it is not that the plaintiff lost his case that moves the Court along its present course, but rather, that the cause was undertaken with what the Court finds was either knowledge or the clear means to determine that it never could have been won and, indeed, was never more than an insensitive personal experiment intended to harass an employer that was wholly blameless of the charges levied against it. The Court believes that while its role in discouraging such suits is fortunately only rarely invoked and, indeed, disappointedly carried forward, this case is such a case where that must be done if others are to understand the resolve of the Court to always be tolerant and fair, yet firm and just. For these reasons, the Court believes that an award on account of attorney's fees and costs in some measure as recompense to the defendant's loss here is both necessary and appropriate.

The damage plaintiff has caused the defendant in this case is not insubstantial. As a result of plaintiff's suit, the defendant has been forced to devote hundreds of hours of personnel time and thousands of dollars in resources in time when only the most efficient and productive application of such hours and time can be hoped for and expected by those who are attempting to remain productively engaged. In addition to the harm to the private defendant by bringing these totally baseless claims before the Court, plaintiff has further postponed the time when other worthy claimants waiting to be heard, can be heard, not to speak of the needless consumption of public resources that are always expected to be put to only the best necessary use. The defendant has filed papers with the Court that easily support its contention that in defending this action it incurred $355.20 in costs and $17,902.50 in counsel fees for service rendered by Morris R. Brooke, Esquire,

---

1. The Supreme Court noted that different policy considerations are present in determining an award of fees to a prevailing defendant as opposed to an award to a prevailing plaintiff. *Christiansburg Garment Co. v. E.E.O.C., supra,* at 418–419, 98 S.Ct. at 698–99. Accordingly, this Court is sensitive to the distinction, but has nevertheless concluded that the present case is clearly within the scope of the *Christiansburg* rule for determining when a prevailing Title VII defendant should be entitled to an award of attorney's fees.

partner in the firm of Drinker Biddle & Reath. The defendant requests the full amount of its costs, but seeks only $11,-935.00 in counsel fees which is ⅘ths of the amount it has actually incurred, which represents the four frivolous claims out of the six claims that were filed. The Court believes that this is a generous allocation inasmuch as virtually all of the testimony bore on the four claims with very little devoted to the two claims that barely passed muster on the frivolity scale. The above amount suggests that Mr. Brooke devoted a total of 102.3 hours at the trial of this case, and that Mr. Brooke's normal hourly rate is $175.00. The Court concludes that counsel actually spent the number of hours on the case, and when applied to even the hourly rate of between $100.00 to $175.00 per hour, a range of between $7,000.00 to $12,000.00 for counsel fee is not unreasonable. Nonetheless, the Court must temper its calculation of what is the fair and reasonable sum that has been earned with equitable considerations, which in this instance preclude an award of the full amount sought because of what the Court understands to be the plaintiff's station in life as a factory worker who, though skilled, would find an award of what the defendant is entitled to to be so substantial as to be virtually ruinous and consequently would be wholly unfair.

The Court believes that under all the circumstances an award of $1,000.00 on account of fees, and $355.20 for costs, payable, without interest, in monthly installments of not less than $50.00, is reasonable and will serve to satisfy the primary goal of deterrence together with the secondary goal of recompense to the defendant.

An appropriate Order will be entered.

### ORDER

AND NOW, TO WIT, this 13th day of December, 1982, for the reasons stated in the foregoing Memorandum, IT IS ORDERED as follows:

1. Plaintiff is *directed* to pay to General Electric Company the sum of One Thousand Three Hundred Fifty-Five Dollars and Twenty Cents ($1,355.20), which represents a reasonable award for attorney's fees and costs;

2. Plaintiff is *directed* to make monthly installment payments of not less than Fifty Dollars ($50.00) *on or before the 15th day of each month,* beginning with the month of December, 1982, until such time as the sum of $1,000.00 has been paid;

3. In the event that plaintiff fails to make a required payment, General Electric Company may, after giving plaintiff ten (10) days' notice by registered mail, apply to this Court for entry of judgment against plaintiff for the full unpaid balance of this award.