**Dr. William A. SMITH, et al., Plaintiffs,**

v.

**SMYTHE, CRAMER COMPANY, et al., Defendants.**

No. C 80–34.

United States District Court,
N.D. Ohio, E.D.

June 1, 1983.

Avery S. Friedman, Cleveland, Ohio, for plaintiffs.

Henry DuLaurence, Cleveland, Ohio, for defendant Smythe, Cramer Co.

## POST–JUDGMENT MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

This was a civil rights action pursuant to 42 U.S.C. §§ 1981, 1982, 3612, and 3617 in which plaintiffs claimed that the defendant real estate company refused to sell them a residence because of their race. A directed verdict was entered in favor of defendant Smythe, Cramer Company following plaintiffs' presentation of their case-in-chief to the jury. Judgment was entered accordingly.

Defendants Smythe, Cramer Company, L.B. McKelvey, and Barbara Davis have moved for an award of attorney's fees pursuant to 42 U.S.C. § 1988. Defendants' position is that the action was "baseless, frivolous, and without grounds" and that fees should be awarded against both the non-prevailing plaintiffs and their counsel.

In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court of the United States considered "what standard should inform a district court's discretion in deciding whether to award attorney's fees to a successful *defendant* in a Title VII [of the Civil Rights Act of 1964] action." 434 U.S. at 417, 98 S.Ct. at 698 (emphasis in original). The Court held:

> In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

*Id.* at 421, 98 S.Ct. at 700.

In *Tonti v. Petropoulous*, 656 F.2d 212 (6th Cir.1981), the United States Court of Appeals for the Sixth Circuit affirmed a district court decision that had applied the *Christiansburg Garment* standard to an award of prevailing defendant's attorney's fees pursuant to 42 U.S.C. § 1988. Therefore, defendants in this action are entitled to an award of attorney's fees if, without regard to the existence of subjective bad faith, plaintiffs' action was "frivolous, unreasonable, or without foundation."

In the autumn of 1979 Mr. and Mrs. William J. Schuldt entered into a listing contract with defendant Smythe, Cramer Company in an effort to sell their residence on Lytle Road in Shaker Heights, Ohio. On November 26, 1979 plaintiffs entered into a written contract to purchase the Lytle Road property for eighty two thousand dollars ($82,000). This written purchase agreement contained a provision that made the sale contingent upon plaintiffs' ability to obtain conventional financing within fifteen (15) banking days. The fifteen (15) day period expired on December 17, 1979.

Smythe, Cramer Company continued to show the Lytle Road property to prospective buyers during the period from November 26 through December 17, 1979 with the understanding that there was an outstanding contingent purchase contract for the property.

Plaintiffs sought to borrow ninety percent (90%) of the purchase price through conventional financing at First Bank National Association. Plaintiffs were required by federal law to obtain private mortgage insurance (PMI) as a condition precedent to being granted the loan by First Bank National Association. On December 17, 1979 First Bank National Association Vice-President Herman Knight informed Smythe, Cramer Company that plaintiffs' loan had been approved "subject to PMI approval."

On December 18, 1979 First Bank National Association submitted plaintiffs' PMI application to the American Mortgage Insurance Company. On December 19, 1979 an agent of Smythe, Cramer Company presented to the Schuldts a subsequent offer to purchase the Lytle Road property for eighty two thousand dollars ($82,000), including a fifty percent (50%) downpayment. The Schuldts accepted this subsequent offer on the same day.

Plaintiffs' primary claim of discrimination was that, although they had obtained financing as of December 17, 1979 in accordance with the purchase agreement,

Smythe, Cramer Company refused to proceed with the sale, continued to solicit other prospective buyers, and ultimately consummated a sale of the Lytle Road property to caucasian buyers. The basis of the claim was that PMI was customarily issued as a matter of course, that Smythe, Cramer Company should have known this, and that Smythe, Cramer Company therefore should have known that there was no genuine contingency to their having obtained financing at the time it continued to solicit other buyers and ultimately consummated the sale to the caucasian buyers.

The evidence at trial established that PMI was not customarily issued as a matter of course or in a pro forma manner. Furthermore, that the plaintiffs had falsified the financial statement portion of their PMI application indicated that they knew PMI was not customarily issued as a matter of course.

> But what was clearly established in the plaintiffs' own case that private mortgage insurance is not issued as a matter of course and as a matter of routine procedure without concern is that the plaintiffs' own knowledge demonstrated in the evidence that it was not pro forma and routine, because when the plaintiffs submitted an application for private mortgage insurance the plaintiffs falsified their assets and liabilities by asserting that they had $10,000 in a checking account.
>
> Mr. Knight testified that, well, 10,000 subsequently came in the checking account, we put it in escrow.
>
> Well, it never got into the checking account. The bank statements show that $10,000 was never deposited in Dr. Smith's checking account and the $10,000 was never an asset. That was the money that was borrowed from the Cardinal subsidiary corporation, upon which they were to take a second mortgage. That was a liability, not an asset, never in the checking account.
>
> And Mr. Knight, the loan officer, acknowledged in his own testimony that there was never that $10,000 in the checking account. He acknowledged in his testimony that it was the money that was put in escrow.
>
> The evidence is clear that that $10,000 was a liability. If it was routine and if it was pro forma, was there a necessity for Dr. Smith to have falsified that statement?

Transcript of oral ruling, May 2, 1980, at 15–16.

It is apparent that plaintiffs were aware at the outset of this action that their primary claim of discrimination was frivolous and without foundation. Defendants are therefore entitled to an award of reasonable attorney's fees against plaintiffs.

■ Defendants seek to have plaintiffs' counsel bear a portion of the attorney's fees award in this action. Whether a court may exercise its inherent power to assess attorney's fees against counsel depends on whether counsel may be found to have willfully abused the judicial process. *Glass v. Pfeffer,* 657 F.2d 252, 257 (10th Cir.1980), citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766–67, 100 S.Ct. 2455, 2464–65, 65 L.Ed.2d 488 (1980). While plaintiffs' primary claim may be characterized as having been without foundation, it is not a situation in which plaintiffs' counsel may be said to have willfully abused the judicial process. Plaintiffs' counsel shall not be required to bear a portion of the attorney's fees award.

■ In support of their motion for attorney's fees defendants submit the affidavit of attorney Henry DuLaurence. The affidavit indicates that attorney DuLaurence and his associate, Mary Beth Ballard, spent two hundred seven (207) hours in the defense of this action. Exhibit "A" to the affidavit itemizes the manner in which the hours were spent. Attorney DuLaurence also affies that he is primary legal counsel for Smythe, Cramer Company and that he bills the Company at the hourly rate of seventy-five dollars ($75.00) for his and his associate's services. The affidavit indicates that Smythe, Cramer Company therefore incurred attorney's fees expense in the amount of fifteen thousand five hundred

twenty five dollars ($15,525.00) to defend this action. The affidavit also itemizes four hundred fifty two dollars and forty four cents ($452.44) in costs and expenses incurred by Smythe, Cramer Company during the defense of this action.

A review of the affidavit and the itemized statement of hours and expenses indicates that the hours spent by the attorneys, the hourly rate charged by the attorneys, and the costs and expenses incurred are reasonable. Therefore, defendants are entitled to receive from plaintiffs a total of fifteen thousand nine hundred seventy seven dollars and forty four cents ($15,977.44) in attorney's fees and related expenses.

This Court notes in closing that an award of prevailing defendant's attorney's fees pursuant to 42 U.S.C. § 1988 must be made with great care. Such awards are drastic sanctions that must be made sparingly so that potential civil rights plaintiffs are not discouraged from initiating lawsuits of arguable merit; such a chilling effect must be avoided. This action, however, was not even of arguable merit; plaintiffs' evidence clearly demonstrated that they knew their claim of discrimination was clearly without foundation. This action is therefore one in which the drastic sanction of awarding attorney's fees to the prevailing defendant is appropriate.

IT IS SO ORDERED.