AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS, Plaintiff,

v.

Joseph P. TEASDALE, Defendant.

No. 81–0317–CV–W–5.

United States District Court, W.D. Missouri, W.D.

June 15, 1983.

---

Robert W. McKinley, Swanson, Midgely, Gangwere, Clarke & Kitchin, Kansas City, Mo., for plaintiff.

William Arnet, Michael Boicourt, Asst. Attys. Gen., Jefferson City, Mo., Patrick E. Hartigan, Kansas City, Mo., for defendant.

## ORDER AND MEMORANDUM

### SCOTT O. WRIGHT, District Judge.

The plaintiff insurance company[1] brought an action alleging that the former Governor of the State of Missouri violated its federally protected civil rights, tortiously interfered with its state law contract rights, and uttered injurious falsehoods against it. A seven-day jury trial was conducted on the insurance company's claims. After the jury returned a verdict in favor of the former Governor, this Court ordered the insurance company to show cause why the former Governor's attorneys' fees and expenses should not be awarded against it under 42 U.S.C. § 1988. Contemporaneously with

the issuance of the show cause order, the defendant moved for an award of his attorneys' fees and expenses. Both parties have responded to the show cause order. The plaintiff has additionally moved for a new trial on all three counts of its complaint. For the reasons which follow, the Court finds that the insurance company's prosecution of this case compels an award of $63,-287.21 to the former Governor for his attorneys' fees and expenses, and that a new trial is not warranted.

### I. Vindictive and Frivolous Lawsuit

■ Section 1988 provides for an allowance of attorney's fees and expenses to the prevailing party in a civil rights action. *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1982). Its general purpose is to ensure persons with civil rights grievances "effective access to the judicial process." H.R.Rep. No. 94–1558, p. 1 (1976). Accordingly, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." S.Rep. No. 94–1011, p. 4 (1976) U.S.Code Cong. & Admin. News 1976, pp. 5908, 5912 (quoting *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)). A prevailing defendant, on the other hand, may recover an attorney's fee *only* where the suit was vexatious, frivolous, groundless, meritless, unreasonable, or brought to harass or embarrass. H.R.Rep. No. 94–1558, p. 7 (1976); *Hensley, supra* —— U.S. at —— n. 2, 103 S.Ct. at 1937 n. 2; *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam); *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421–22, 98 S.Ct. 694, 700–01, 54 L.Ed.2d 648 (1978) (award proper even if suit not brought in subjective bad faith).

■ The suit prosecuted by the insurance company against the former Governor of Missouri is aptly characterized by each of those descriptive standards. From the commencement of the lawsuit, the insurance

1. This company should not be confused with the well-known American Family Insurance Company.

company's claims appeared vindictive and frivolous. The nine million dollar complaint, which was filed only after the former Governor had lost his bid for re-election, alleged that the former Governor issued a press release concerning the deceptive practices of the entire cancer insurance industry for the purpose of "carrying out a political propaganda scheme ... for his personal political goals." The company had never moved to enjoin the executive branch from proceeding during the period when its civil rights were allegedly being violated. The letter and spirit of the complaint, replete with allegations of harassment, bad faith conspiracies and other political machinations, manifest an intent on the part of the insurance company to use the lawsuit to attack the integrity of the former Governor. That spirit was no less diminished during discovery conferences called on the question of whether the former Governor should be deposed. The attorneys for the insurance company represented that the former Governor had acted in bad faith and maliciously. The Court allowed discovery to continue in light of what the Court accepted as good faith representations of the insurance company's attorneys. It became clear at trial that the representations had not been made in good faith.

The testimony of trial indicated that the insurance company has filed similar suits against other parties who have publicly criticized the business practices of the cancer insurance industry. Most of these critical statements followed Congressional reports condemning the cancer insurance business. The evidence at trial showed that in one of its suits against a well-known and highly reputable magazine, which did an investigative report on the cancer insurance industry, the insurance company surrendered its multi-million-dollar lawsuit in exchange for the publication of a one-paragraph letter-to-the-editor. The magazine had refused to settle the case on any terms, but did publish the letter because it would have done so even if the insurance company had not filed the lawsuit. The insurance company has never won one of its suits. The evidence at trial showed that this insurance company has not only forced other parties to defend vindictive and frivolous lawsuits, but has required and is continuing to require other courts to waste judicial resources in processing those suits.

Though the lawsuit appeared vindictive and frivolous from the outset, the Court permitted the discovery to go forward; it gave the insurance company every opportunity to demonstrate that there was merit to its contentions. In fact, the Court overruled two motions filed by the former Governor for summary judgment. The motions were directed at the question of how extensively executive immunity shields former state officeholders from liability for decisions made in their official capacities. *See, Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). *But see, Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 2738–39, n. 30, 73 L.Ed.2d 396 (1982) (unclear application to state officials). Though the discovery documents suggested to the Court that the insurance company had failed to uncover any evidence of bad faith or malicious intent on the part of the former Governor or his subordinates, the Court accepted the insurance company's good faith representations that it would be shown at trial and deferred the question of intent to the collective wisdom of the jury. *Cf. McLain v. Meier,* 612 F.2d 349, 355–56 (8th Cir.1979) (sparing use of summary judgment). The Court's refusal to award summary judgment, however, did not render this lawsuit any less vindictive or frivolous. Unfortunately, some frivolous claims do reach juries in federal courts in Missouri. *See, e.g., Fantroy v. Greater St. Louis Labor Council,* 511 F.Supp. 70 (E.D.Mo.1980).

The seven-day trial of this lawsuit left no doubt in the minds of the Court and jury that the insurance company had vexatiously pursued its claims against the former Governor long after it became clear that the lawsuit was vindictive and frivolous. *Christiansburg, supra,* 434 U.S., at 422, 98 S.Ct. at 701. Without regard to the merits of its complaint, the insurance company failed to present any admissible evidence in support of its prayer for nine million dollars. It undertook no surveys of customers who allowed their cancer insurance policies to

lapse. It produced only a couple of persons who stated that the former Governor's press release had some bearing on their decision not to renew their cancer insurance policies. The insurance company was improperly advised that it could qualify an actuary, who had only reviewed sales statistics, as an expert able to testify about what motives guided policyholders in their respective decisions to allow their cancer insurance policies to lapse. In fact, the insurance company surrendered its claim for damages, both actual and punitive, during its closing argument. In its closing, it begged the jury to merely return a nominal sum. At that point, the insurance company had ample reason to fear an "abuse of process" lawsuit by the former Governor, and had been told by the Court that the Court was considering an award of attorneys' fees and expenses. The insurance company sought a nominal verdict in order to defend any future lawsuit and to blunt any grounds for an attorney's fee award.

With regard to the merits, the Court informed the parties, at the close of the insurance company's case-in-chief, that it believed that a directed verdict in favor of the former Governor was proper, but would allow the case to be given to the jury. The Court made the same pronouncement at the end of the former Governor's case-in-chief and made a record on the frivolous nature of the lawsuit. The testimony had made clear what had been predicted by the defendant in the pretrial discovery conferences and motions for summary judgment. All of the evidence demonstrated that the former Governor acted well within the executive authority vested in him by the State. The insurance company did not produce a scintilla of evidence which suggested that the former Governor acted in bad faith or with malicious intent, or outside the scope of his authority. In fact, the evidence demonstrated that he had acted in the best interest of the citizens of Missouri. The Court even went so far as to instruct the jury in the manner requested by the insurance company, though the Court believed that the instructions submitted by the company were not reflections of the law. The jury deliberated for less than one hour before returning verdicts on all three counts in favor of the former Governor. Several of the jurors labeled the insurance company's actions as "frivolous" in public statements made after their service was completed.[2]

The circumstances of this case present a paradigm. Never before has this Court awarded attorney's fees and expenses against a civil rights plaintiff. But this Court's review of other cases, including those of courts of this Circuit which have considered that type of an award, *see, e.g., Bowers v. Kraft Food Corp.,* 606 F.2d 816 (8th Cir.1979); *Patzkowski v. U.S.,* 576 F.2d 134 (8th Cir.1978); *Fantroy v. Greater St. Louis Labor Council,* 511 F.Supp. 70 (E.D. Mo.1980), compels the Court to conclude that the circumstances of this case overwhelmingly warrant an award. The insurance company is not like the "typical" civil rights plaintiff who is easily deterred from prosecuting vindictive and frivolous claims. A "typical" plaintiff's ability to litigate a vindictive and frivolous lawsuit is generally restricted by insufficient resources and by the ethical standards which govern attorneys who might be retained. In this case, however, the insurance company was able to marshal the resources necessary to con-

---

**2.** The insurance company lastly asserted in its response to this Court's show cause order that its complaint was not frivolous because a state court had previously overruled a "cease and desist" order of the Director of Insurance stopping the sale of cancer insurance policies on the ground that the "cease and desist" order was not based on competent and substantial evidence. The assertion is not persuasive because the one-page memorandum decision of the state court has absolutely no relevance to the merits of this lawsuit. The decision of the state court addresses neither the question of

the scope of the former Governor's executive authority nor the question of how the authority was used.

In fact, the state court filed its decision with the consent of both parties. At the time of its filing, the state, which was by then governed by a new administration whose policies differed with respect to the abuses of the cancer insurance industry, chose not to oppose the cancer insurance industry. No adversarial proceedings were ever conducted. The state court entered no findings of fact or conclusions of law in support of the consent decree.

duct extensive discovery and to retain counsel willing to vexatiously pursue a former Governor of Missouri. The insurance company had the means and legal expertise to bend the legal system to its vindictive service. Where a civil rights plaintiff has used the legal system as a vehicle of vengeance, however, it must be prepared to pay the fare. In this case, as the Court outlines in the following section, the fare is $63,287.21.

## II. *Amount of Fees and Expenses*

As the Court has previously determined, the prevailing defendant is entitled to a reasonable sum for his attorneys' fees and expenses. *Hensley, supra.* The former Governor was defended by the Attorney General of Missouri and by his personal attorney. The Attorney General's office assigned five staff attorneys to the case. Two of those attorneys ceased working on the case after the first motion for summary judgment was filed. The State has not requested reimbursement for any of the time spent by those two attorneys. The State, however, has submitted a time and expense bill for the three attorneys who ultimately defended the former Governor at trial. The following is a summation of the State's bill:

A. William Arnet (co-lead counsel)
  1. In-court: 74.8 hours at $65.00
  2. Out-of-court: 82.65 hours at $40.00
  3. Travel: 38.50 hours at $25.00
  4. Total: $9,130.00
B. Michael Boicourt (co-lead counsel)
  1. In-court: 62.5 hours at $65.00
  2. Out-of-court: 98.5 hours at $40.00
  3. Travel: 9 hours at $25.00
  4. Total: $8,227.50
C. Nancy Aulgur (assistant counsel)
  1. In-court: 59.5 hours at $50.00
  2. Out-of-court: 49.5 hours at $40.00
  3. Travel: 17 hours at $25.00
  4. Total: $5,380.00
D. Total Fees: $22,737.50
E. Expenses of Office

1. Total: $9,434.90 [3]

The summation includes Mr. Arnet's fifty percent discounting of his total time and Mr. Boicourt's thirty percent discounting.

The insurance company objects to the award of fees and expenses to the State on the grounds that the State entered this litigation "voluntarily," that the State's attorneys have already received payment by way of salaries paid to them, that the former Governor, who is an attorney, could have defended himself, and that the State's attorneys duplicated the effort of the former Governor's privately retained counsel. For reasons which are presumably obvious, these objections are without merit. The State was required to represent the former Governor. Since the former Governor was sued as an official of the State of Missouri, the State had an exposure to liability. For the plaintiff to now assert that there was no need for the State to become involved further demonstrates that its claim under 42 U.S.C. § 1983, which requires an official act under color of state law, was vindictive and frivolous. Though its attorneys are paid a salary, the State may recover its attorneys' fees and expenses under Section 1988. *Oldham v. Ehrlich,* 617 F.2d 163 (8th Cir.1980). Moreover, the time sheets demonstrate that the State took the lead role in discovery and trial of this suit. The former Governor's private counsel supplemented the work performed by the State's attorneys and did not duplicate their efforts.

The insurance company has not objected to the hourly rates charged by the State for the work of its attorneys. The rate charged, which has been heavily and needlessly discounted, is more than reasonable and is less than the customary rate charged by attorneys in the private practice of law in this district. Similarly, the State's charge for expert fees and expenses, and other expenses is extremely reasonable. *See Jorstad v. IDS Realty Trust,* 643 F.2d 1305 (8th Cir.1981).

---

**3.** Because the Attorney General's fund for the payment of expenses incurred by its members was near depletion at the commencement of this lawsuit, the Attorney General was required to expend additional time and effort in securing an emergency "expense" appropriation from the State Legislature in order to defend the lawsuit. The Attorney General received $10,-000.00 and kept the expenses within that limit.

The former Governor's privately retained counsel have also moved for an award of their reasonable attorneys' fees and expenses. The following is a summation of their bill:

  A.  Patrick Hartigan (lead counsel)
      1.  Time: 266.1 hours at $95.00
      2.  Total: $25,279.50
  B.  Deborah Doak (assistant counsel)
      1.  Time: 65.6 hours at $60.00
      2.  Total: $3,936.00
  C.  Richard Knight (assistant counsel)
      1.  Time: 2.9 hours at $75.00
      2.  Total: $217.50
  D.  Julie Fry (assistant counsel)
      1.  Time: 4.3 hours at $70.00
      2.  Total: $301.00
  E.  Paralegal
      1.  Time: 9 hours at $35.00
      2.  Total: $315.00
  F.  Expenses
      1.  Hartigan Firm: $753.86
      2.  Teasdale: $312.45
      3.  Total: $1,066.31
  G.  Total Fees: $30,048.50

The insurance company has not objected to the number of hours submitted by the former Governor's private counsel or to the rates charged by the Hartigan law firm.

### III

Accordingly, it is hereby

ORDERED that the former Governor's motion for his attorneys' fees and expenses is granted. It is further

ORDERED that the plaintiff pay the State $32,172.40 for its attorneys' fees and expenses, and pay the Hartigan Firm $31,114.81 for its attorneys' fees and expenses. It is further

ORDERED that the plaintiff's motion for a new trial is denied.