**Dr. William A. SMITH; and Mrs. Betty Smith, Plaintiffs-Appellants,**

v.

**SMYTHE–CRAMER COMPANY; L.B. McKelvey, as President of Smythe-Cramer Company; Barbara Davis, Individually and as Agent of Smythe-Cramer Company; William J. Schuldt; and Dorothy Schuldt, Defendants-Appellees.**

**No. 83–3466.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 3, 1984.

Decided Feb. 6, 1985.

Avery S. Friedman (argued), Cleveland, Ohio, for plaintiffs-appellants.

Henry DuLaurence (argued) [McKelvey, Davis & Smythe-Cramer] Branka A. Snajdar-Mismas, Sheldon Stein, Cleveland, Ohio, for defendants-appellees.

Janet E. Labella, Bruce S. Gelber, Nat. Committee Against Discrimination in Housing, Washington, D.C., for amicus curiae Nat. Committee Against Discrimination.

Before EDWARDS * and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

Appellants appeal from the order of the district court assessing against them their opponents' attorneys fees after granting a directed verdict to defendants-appellees. This case requires us to review the standards for awarding attorneys fees to prevailing defendants in actions to enforce civil rights laws.

## I

Plaintiffs, Dr. William and Mrs. Betty Smith, a black couple, brought this fair housing action pursuant to 42 U.S.C. §§ 1981 and 1982 and Title VIII of the 1968 Civil Rights Act, 42 U.S.C. §§ 3601–3619. Plaintiffs alleged that defendants Smythe-Cramer Company, its agents, and William and Mrs. Dorothy Schuldt, refused to sell a home to them because of their race. After the district court issued a temporary restraining order, which subsequently was vacated, preventing sale of the property to a third party, the Schuldts agreed to sell the property to the Smiths and were dismissed from the case. The case proceeded to trial and the district court directed a verdict for the remaining defendants at the close of plaintiffs' case. Subsequently, the court awarded attorneys fees to defendants in the amount of $15,525.00 for defending the action. *Smith v. Smythe-Cramer Co.*, 571 F.Supp. 58 (N.D.Ohio 1983). Plaintiffs appeal only from the order awarding attorneys fees.

On November 26, 1979, appellants entered into a sales agreement with the Schuldts for a house located at 3600 Lytle Road, Shaker Heights, Ohio. The property was listed by Ms. Betty Miller, a real estate salesperson associated with Smythe-Cramer's Shaker Heights office. The agreement provided for a purchase price of $82,000.00, a ten percent downpayment, and was contingent upon the Smiths obtaining conventional financing for the balance of the purchase price within fifteen banking days. The period was to expire on December 17, 1979.

The Smiths applied for financing with the First Bank National Association, a minority-owned bank. They previously had applied for financing to purchase another

* The Honorable George Edwards took senior status January 15, 1985.

house, but the loan had failed because the bank failed to verify Dr. Smith's employment properly. That application, dated October 1, 1979, remained on file with the bank. Herman Knight, the Smiths' loan officer at First Bank, used the October 1 application in connection with the purchase agreement for the Lytle Road property. Knight entered additional information on the application and incorrectly listed certain funds as an asset rather than a liability. These funds were loans offered to minority medical school graduates as an inducement to remain in the Cleveland area. Plaintiffs did not re-sign the application even though the data on it was amended.

On December 17, 1979, Knight informed Ms. Barbara Davis, Manager of Smythe-Cramer's Shaker Heights office, that the Smiths' loan application was approved, subject to approval of private mortgage insurance (PMI). Controlling law required PMI approval as a condition for the grant of the loan. Knight informed Davis that he was confident the PMI would be granted and that he already had discussed it with the private mortgage insurance company. That same day, listing agent Ms. Betty Miller contacted Mrs. Schuldt, informing her that the financing had not been approved.

Despite testimony at trial that PMI is approved routinely and that it is customary to hold an offer open pending approval, Miller did not advise Mrs. Schuldt of the likelihood of approval but suggested that she contact an attorney to determine whether to hold the offer open. Mrs. Schuldt testified she and her husband probably would have granted an extension if they had known the PMI probably would be approved. Instead, they opened and accepted a subsequent offer from a white couple on December 19. This offer was presented through Smythe-Cramer Company. The Smiths' PMI application was approved on December 20.

## II

The standards for awarding attorneys fees to prevailing defendants are well established. The statute allowing recovery of attorneys fees applicable to this case is 42 U.S.C. § 1988, which provides in part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.[1]

The fee awards provision under the Fair Housing Act, 42 U.S.C. § 3612(c), authorizes awards only to prevailing plaintiffs who are financially unable to assume the fees. The district court awarded attorneys fees to defendants under section 1988.

In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court considered the attorneys fees provision under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k). The Court held that while prevailing plaintiffs are entitled to attorneys fees under that statute in all but special circumstances, prevailing defendants are entitled to attorneys fees much less frequently. *See id.* at 417–18, 98 S.Ct. at 698. Relying on the legislative history to Title VII, the Court found that Congress intended to provide incentives for private enforcement of the civil rights laws while at the same time affording some protection to defendants from litigation "having no legal or factual basis." *Id.* at 420, 98 S.Ct. at 699. Noting that defendants would be entitled to attorneys fees even in the absence of a statute for suits brought in subjective bad faith, *id.* at 419, 98 S.Ct. at 699, the Court held that bad faith is not required for recovery. "In sum," the Court held, "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a

---

1. *See also* Martineau, Frivolous Appeals: The Uncertain Federal Response, 1984 Duke L.J. 845, 868.

finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421, 98 S.Ct. at 700.

The *Christiansburg* Court stressed that a district court must resist the urge to engage in "post hoc reasoning" and the "hindsight logic" of concluding a suit is without foundation because the plaintiff ultimately does not prevail. *Id.* at 421–22, 98 S.Ct. at 700. The Court noted that a plaintiff may have an entirely reasonable ground for bringing suit even when the law or facts appear questionable or unfavorable at the outset. *Id.* at 422, 98 S.Ct. at 700. Therefore, a plaintiff should not be assessed his opponent's attorneys fees unless the court finds the claim was groundless at the outset or "that the plaintiff continued to litigate after it clearly became so." *Id.* The Court therefore affirmed the district court's denial of fees, finding the EEOC's attempt to bring an unpursued two-year-old claim as a "pending" case was an issue of first impression under a new statute and was not without foundation.

Section 1988 contains a similar attorneys fees provision to that in Title VII. Although the legislative history to section 1988 speaks of allowing awards to defendants where the plaintiff brings an action in "bad faith," it also makes clear that Congress intended that the standards for awarding fees under section 1988 should be the same as those under Title VII and other acts allowing awards of attorneys fees. Attorneys Fees Awards Act, S.Rep. No. 94–1011, 94th Cong., 2d Sess. 4–5, *reprinted in* [1976] U.S.Code Cong. & Ad. News 5908, 5912. Therefore, the Supreme Court in *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) held that the *Christiansburg* standards apply to suits subject to the fee provisions of section 1988. *See also Tarter v. Raybuck,* 742 F.2d 977, 985–86 (6th Cir. 1984) (*Christiansburg* standards apply to section 1983 suit).

 Application of these standards requires inquiry into the plaintiffs' basis for bringing suit. Awards to prevailing defendants will depend on the factual circumstances of each case. While a showing of bad faith is not required for an award of attorneys fees to a prevailing defendant, such a showing would justify an award of fees. Additionally, courts have awarded attorneys fees to prevailing defendants where no evidence supports the plaintiff's position or the defects in the suit are of such magnitude that the plaintiff's ultimate failure is clearly apparent from the beginning or at some significant point in the proceedings after which the plaintiff continues to litigate. As the Supreme Court emphasized in *Hughes,* however, the mere fact that allegations prove legally insufficient to require a trial does not, for that reason alone, render a complaint groundless under *Christiansburg.* 449 U.S. at 16, 101 S.Ct. at 179.

In *Tonti v. Petropoulous,* 656 F.2d 212 (6th Cir.1981), this Court affirmed an award of attorneys fees to the defendant where the plaintiff brought a section 1983 suit in federal court seeking to relitigate matters that already had been determined clearly and finally in the state courts. The plaintiff had brought two rounds of challenges in the state courts to a probate court decision, alleging fraud and collusion on the part of the probate judge. Holding that the plaintiff's case represented a misuse of section 1983 to attack collaterally final state judgments and to obtain probate jurisdiction in federal court, this Court affirmed the fees award of the district court. *Id.* at 215–16. Other courts have awarded fees where plaintiffs misuse the courts to challenge consent decrees or matters resolved in previous cases or bring claims that are clearly barred by unambiguous case law. *E.g., Werch v. City of Berlin,* 673 F.2d 192 (7th Cir.1982); *Prate v. Freedman,* 583 F.2d 42 (2d Cir.1978); *Carrion v. Yeshiva University,* 535 F.2d 722 (2d Cir. 1976); *Hepperle v. Panama Machinery & Supply Co.,* 532 F.Supp. 1085 (N.D.Fla. 1982), *appeal dismissed,* 710 F.2d 838 (11th Cir.1983); *Life Science Church v. Vocke,* 531 F.Supp. 790 (E.D.Wis.1982); *Whiten v.*

*Ryder Truck Lines, Inc.,* 520 F.Supp. 1174 (M.D.La.1981).

In other cases, awards of attorneys fees will depend on the legal or factual sufficiency of a claim. In *Tarter v. Raybuck,* 742 F.2d 977 (6th Cir.1984), this Court overturned an award of attorneys fees to prevailing defendants in a section 1983 action. The plaintiffs brought suit against school administrators who searched the plaintiff student for marijuana after the administrators had reasonable suspicion to believe he had engaged in an illegal transaction with other students. This Court rejected the district court's finding that the search was consensual and, observing that the scope of a student's fourth amendment rights and the authority of school officials to conduct searches were unresolved issues of law, held that the plaintiffs' suit was not without foundation. *Id.* at 986–87. Therefore, we held that the district judge had abused his discretion by assessing against the plaintiffs their opponents' attorneys fees. *Id.* at 986. While observing that the district court properly had directed a verdict for the defendants, this Court cautioned against too frequent assessments of attorneys fees in light of the overriding congressional policy of encouraging citizens to vindicate constitutional rights. *Id.* at 984.

Other courts have stressed that prevailing defendants should not be awarded fees where the plaintiff has an arguable basis for pursuing his or her claim. In *Clark v. Universal Builders,* 706 F.2d 204 (7th Cir. 1983), the court affirmed a denial of fees where the plaintiffs lost their claim of discriminatory pricing of houses in black neighborhoods. Examining the circumstantial evidence including lower prices in a white subdivision, the court held the plaintiffs' claims were clearly not frivolous, unreasonable or without foundation, even though the housing was found not comparable. *Id.* at 213. In *White v. South Park Independent School District,* 693 F.2d 1163 (5th Cir.1982), the court reversed an award of attorneys fees where the plaintiff challenged his termination from employment. Although the court held he was not discharged for an impermissible reason but

for emotional problems and threats to other faculty members, it stressed that his claim was supported by his previous popularity and high evaluations. *Id.* at 1170. Finally, in *Montgomery v. Yellow Freight System, Inc.,* 671 F.2d 412 (10th Cir.1982), the court refused to assess fees in an employment discrimination case. The court rejected the plaintiff's assertion that his discharge for sleeping on the job was proved to be pretextual by a supervisor's isolated disparaging remark about blacks. The court refused to award attorneys fees to the defendant, however, holding: "In order to penalize the plaintiff with attorney's fees, we must be persuaded that the record is devoid of any evidence of discrimination." *Id.* at 414. *See also Hughes v. Repco,* 578 F.2d 483, 489 (3d Cir.1978) (considering the litigant's good faith in denying assessment of attorneys fees against the plaintiff).

Courts that have awarded fees to prevailing defendants have emphasized the lack of evidence of unconstitutional acts presented by the plaintiff. *E.g., Lewis v. Brown & Root, Inc.,* 711 F.2d 1287 (5th Cir.1983) (no evidence of discrimination and want of prosecution), *on reconsideration,* 722 F.2d 209 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984); *Campbell v. Cook,* 706 F.2d 1084 (10th Cir.1983) (salary reduction clearly based on the plaintiff's improper collection of fees); *American Family Life Assurance Co. v. Teasdale,* 564 F.Supp. 1571, 1573 (E.D.Mo. 1983), *aff'd,* 733 F.2d 559 (8th Cir.1984); *Lacy v. General Electric Co.,* 558 F.Supp. 277, 278 (E.D.Pa.1982); *Brisbane v. Port Authority,* 550 F.Supp. 222, 223 (S.D.N.Y. 1982); *Goff v. Texas Instruments, Inc.,* 429 F.Supp. 973, 976 (N.D.Tex.1977).

### III

■ The district court in the present case held that "plaintiffs were aware at the outset of this action that their primary claim of discrimination was frivolous and without foundation." *Smith v. Smythe-Cramer Co.,* 571 F.Supp. 58, 60 (N.D.Ohio

1983). Although the court relied upon the *Christiansburg* standards, it focused on the incorrect entries on plaintiffs' loan application listing the minority grant loan proceeds as an asset rather than a liability. The court concluded that the incorrect entries showed that plaintiffs had "falsified" their loan application and were therefore aware that PMI is "not customarily issued as a matter of course" or "in a pro form manner." *Id.* at 60. The court held that "plaintiffs' evidence clearly demonstrated that they knew their claim of discrimination was clearly without foundation," and that this case was appropriate for "the drastic sanction of awarding attorney's fees to the prevailing defendant." *Id.* at 61.

We conclude that the district court abused its discretion by awarding attorneys fees to defendants. The court had no basis for concluding that plaintiffs themselves were responsible for, or even aware of, the incorrect data on the loan application form. Moreover, there was testimony that the incorrect data on assets would have no effect on the grant of PMI. Additionally, the overwhelming weight of the evidence was that PMI is indeed granted as a matter of course, and two experts testified it was withheld in fewer than one percent of applications they had processed. As stated previously, PMI was approved in this case.

Not only was there no basis for the court's conclusion that plaintiffs were guilty of misconduct, if there had been misconduct it would not have affected the validity of plaintiffs' claim. Defendants were not aware of the inaccuracies on the PMI application when they took the actions challenged below as discriminatory: not advising the Schuldts that plaintiffs' banker anticipated formal approval soon and other perceived departures from normal real estate practice. The inaccuracies had no effect on the defendants' actions or the plaintiffs' belief that they were victims of discrimination.

In a case such as this where any misconduct would not affect the plaintiff's belief that he or she was a victim of discrimination, it is improper to assess fees on that basis. In *Price v. Pelka,* 690 F.2d 98 (6th Cir.1982), this Court held that the plaintiff's perjury during a hearing was not an appropriate basis for denying attorneys fees where she was successful on the merits. The plaintiff proved a violation of the Fair Housing Act and the defendants admitted liability, but the plaintiff later perjured herself by testifying that she was married and denying that she had been evicted from a previous tenancy. The Court stressed that liability was not affected by the perjured statements and ordered an award of attorneys fees to the successful plaintiff. *Id.* at 101.

The same policy should apply in the case of an unsuccessful plaintiff where misconduct would not affect the ultimate issue of the defendant's liability or the plaintiff's basis for believing that discrimination has occurred. *Cf. Carrion v. Yeshiva University,* 535 F.2d 722, 728 (2d Cir.1976) (the plaintiff's perjury is considered where it bears on the determination that the charges are without foundation and brought maliciously). *See also Hughes v. Repko,* 578 F.2d 483, 489 (3d Cir.1978) (the unsuccessful plaintiff's good faith in bringing suit may be considered in denying an award of attorneys fees).

**IV**

Plaintiffs have presented an adequate basis for their suit to avoid the conclusion that it is frivolous, unreasonable, or without foundation. In addition to their challenge to Smythe-Cramer's failure to inform the Schuldts that PMI approval was anticipated and that it was customary to wait one or two days for final approval, plaintiffs alleged that Smythe-Cramer took inappropriate actions and required more from them than from other customers.

On December 5, plaintiffs' realtor informed them that Smythe-Cramer, in requiring plaintiffs to initial changes in the date of possession, was requiring more than was customary. Smythe-Cramer was not satisfied with the resigning of the con-

tract and required plaintiffs to initial the changes by that evening or the company would entertain another offer. On Saturday, December 15, the Smythe-Cramer agent telephoned plaintiffs at home to inquire into the progress of their loan. The agent apparently was mistaken in her belief that the fifteenth was the final day for loan approval and informed Dr. Smith of this belief. In addition, the agent asked where the Smiths had obtained financing and expressed surprise when Dr. Smith mentioned the minority-owned bank, saying she had never heard of it. Dr. Smith was disturbed by the agent's attitude and persistent questions. He was informed by his own agent that it is a departure from normal practice to call directly the client of another agent.

The main thrust of the complaint was that defendants deviated from ordinary real estate practices when they did not advise the Schuldts that the Smiths' application for PMI was expected to be approved in a few days and that it would avoid a complicated transaction to allow a short extension. Plaintiffs' banker, Mr. Knight, had assured Smythe-Cramer that PMI approval was forthcoming. Knight had informed Dr. Smith that PMI approval was almost automatic; Dr. Smith anticipated no barrier to final sale. Other witnesses testified to the routine nature of PMI approval. Agent Davis of Smythe-Cramer, testified that it is the "normal course" to allow extra time to meet such contingencies before opening for new bids.

Plaintiffs' belief that these departures from ordinary practice were due to their race was based on the advice of professionals familiar with real estate practice. Their claims of housing discrimination were not without foundation, frivolous or unreasonable. They were supported by some evidence. We conclude that the district court applied the *Christiansburg* standards incorrectly and abused its discretion in awarding attorneys fees to defendants. Accordingly, the order of the district court is REVERSED. No costs are taxed. The parties will bear their own costs on this appeal.